## No. 23-10904

## United States Court of Appeals for the Fifth Circuit
_____

Munck Wilson Mandala, L.L.P.,

Plaintiff - Appellant

v.

Mark D. Jordan; Scot Florsheim; Louann Hall; Laura Maczka-Jordan; JP-Banner, L.P.; JP-Banner GP, L.L.C.; Sooner National Property Management, L.P.; JP Realty Partners, Limited; Banner Investors, L.L.C.; Bradford A. Phillips; Liberty Bankers Life Insurance Company; Does 1 Through 50,

Defendants - Appellees

_____

On appeal from the United States District Court for the Northern District of Texas
No. 3:22-CV-1657, Honorable Barbara Lynn

_____

### BRIEF OF APPELLEES
### SCOT FLORSHEIM, JP-BANNER, L.P., LOUANN HALL, LIBERTY
### BANKERS LIFE INSURANCE COMPANY AND BRADFORD A. PHILLIPS

_____

HOLMGREN JOHNSON: MITCHELL MADDEN LLP
Mitchell Madden
Texas State Bar No. 12789350
mmadden@hjmmlegal.com
Melissa Johnson
Texas State Bar No. 19142900
Melissa@hjmmlegal.com
Dennis M. Holmgren
Texas State Bar No. 24036799
Dennis@hjmmlegal.com
12801 North Central Expressway, Suite 140
Dallas, Texas 75243
Phone: (972) 484-7780
Fax: (972) 484-7783
Attorneys for Appellees, Scot Florsheim, JP Banner, L.P., Louann Hall,
Liberty Bankers Life Insurance Company and Bradford A. Phillips

i

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies the following persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| APPELLANT: | COUNSEL FOR APPELLANTS: |
|---|---|
| Munck Wilson Mandala, LLP | Robert Linkin, Marina Bogorad, Jenny Martinez, and William Munck of Munck Wilson Mandala, LLP (Austin, TX, Los Angeles, CA and Dallas, TX) |

| APPELLEES: | COUNSEL FOR APPELLEES: |
|---|---|
| Mark D. Jordan | Joseph Mastrogiovanni of Mastrogiovanni, P.L.L.C. Dallas, TX and John Schorsch of Schorsch & Associates, P.C. Dallas, TX |
| Scot Florsheim | Mitchell Madden, Melissa Johnson, and Dennis Holmgren of Holmgren Johnson: Mitchell Madden, L.L.P. Dallas, TX |
| Louann Hall | Mitchell Madden, Melissa Johnson, and Dennis Holmgren of Holmgren Johnson: Mitchell Madden, L.L.P. Dallas, TX |
| Laura Maczka-Jordan | Joseph Mastrogiovanni of Mastrogiovanni, P.L.L.C. Dallas, TX and John Schorsch of Schorsch & Associates, P.C. Dallas, TX |
| JP-Banner, L.P. | Mitchell Madden, Melissa Johnson, and Dennis Holmgren of Holmgren Johnson: Mitchell Madden, L.L.P. Dallas, TX |
| JP-Banner GP, L.L.C. | Joseph Mastrogiovanni of Mastrogiovanni, P.L.L.C. Dallas, TX and John Schorsch of Schorsch & Associates, P.C. Dallas, TX |

| | |
|---|---|
| Sooner National Property Management, L.P. | Joseph Mastrogiovanni of Mastrogiovanni, P.L.L.C. Dallas, TX and John Schorsch of Schorsch & Associates, P.C. Dallas, TX |
| JP Realty Partners, Limited | Joseph Mastrogiovanni of Mastrogiovanni, P.L.L.C. Dallas, TX and John Schorsch of Schorsch & Associates, P.C. Dallas, TX |
| Banner Investors, L.L.C. | Joseph Mastrogiovanni of Mastrogiovanni, P.L.L.C. Dallas, TX and John Schorsch of Schorsch & Associates, P.C. Dallas, TX |
| Bradford A. Phillips | Mitchell Madden, Melissa Johnson, and Dennis Holmgren of Holmgren Johnson: Mitchell Madden, L.L.P. Dallas, TX |
| Liberty Bankers Life Insurance Company | Mitchell Madden, Melissa Johnson, and Dennis Holmgren of Holmgren Johnson: Mitchell Madden, L.L.P. Dallas, TX |

Dated:  February 20, 2024          Respectfully submitted,

*/s/ Mitchell Madden*
Mitchell Madden
Texas State Bar No. 12789350
mmadden@hjmmlegal.com
Melissa Johnson
Texas State Bar No. 19142900
Melissa@hjmmlegal.com
Dennis M. Holmgren
Texas State Bar No. 24036799
Dennis@hjmmlegal.com
**HOLMGREN JOHNSON:**
        **MITCHELL MADDEN LLP**
12801 North Central Expressway, Suite 140
Dallas, Texas 75243
Phone: (972) 484-7780
Fax: (972) 484-7783
Attorneys for Appellees, Scot Florsheim, JP-Banner, L.P., Louann Hall, Liberty Bankers Life Insurance Company and Bradford A. Phillips

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that the issues presented in this case can be adequately considered and decided upon the written briefs of the Parties and do not request oral argument.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** .................................................................. ii

**STATEMENT REGARDING ORAL ARGUMENT** ........................................................ iv

**TABLE OF CONTENTS** .................................................................................................. v

**TABLE OF AUTHORITIES** ........................................................................................ vii

**GLOSSARY OF ABBREVIATIONS AND TERMS** .................................................. xiv

**STATEMENT OF THE ISSUES** ..................................................................................... 1

**STATEMENT OF THE CASE** ......................................................................................... 2

**I.   PROCEDURAL HISTORY** ......................................................................................... 2

**II.  CONTROLLING FACTUAL ALLEGATIONS SUPPORTING DISTRICT COURT'S DISMISSAL** .................................................................................................................. 2

    A.   Munck's Lease with Gaedeke ................................................................................. 3

    B.   Key Lease Provisions regarding OPEX .................................................................. 3

    C.   Munck Exercises its OPEX Audit Rights ............................................................... 3

    D.   The Audit Reports' Findings are Contrary To Or Do Not Support Munck's Allegations of OPEX Fraud ........................................................................................... 4

    E.   The Sole References to Auditor's Reports .............................................................. 7

    F.   Munck's RICO Statement Offers No Additional Detail Regarding Allegations of OPEX Fraud ...................................................................................................................... 8

    G.   LBLIC and Phillips were not involved in Banner Place during the alleged acts and omissions giving rise to Munck's claims. ......................................................................... 9

**SUMMARY OF THE ARGUMENT** .............................................................................. 13

**ARGUMENT** .................................................................................................................. 15

**I.   STANDARD OF REVIEW** ......................................................................................... 15

    A.   Motion to Dismiss ................................................................................................. 15

    B.   Rule 9(b) ................................................................................................................ 16

    C.   Exhibits, RICO Case Statement, and Attachments ............................................... 18

    D.   Munck's Waiver .................................................................................................... 19

    E.   Affirmance of the District Court Opinion ............................................................. 19

**II.  THE RICO CLAIMS WERE PROPERLY DISMISSED** ........................................ 19

    A.   Munck Did Not Plausibly Allege Racketeering Activity. ..................................... 19

        1.   Munck's Claims Amount Only to a Lease Dispute.  [Responsive to BOAII.A.1.] .... 19

        2.   Munck Pled no Factual Basis for its Conclusory Allegations of Intent to Give Rise to a Strong Inference of Fraud [Responsive to BOAII.A.2.] ..................................... 30

        3.   Munck did not allege RICO claims with requisite particularity. [Responsive to BOAII.A.3] .................................................................................................................. 40

    4.       Munck did not sufficiently allege a RICO pattern. [Responsive to BOAII.B.] ......... 47

III.     MUNCK'S RICO CONSPIRACY CLAIM was properly DISMISSED [RESPONSIVE TO BOA III] ................................................................................................................. 54

   A.    THE DISTRICT COURT DID NOT ERR IN DENYING MUNCK FURTHER LEAVE TO AMEND .................................................................................................................. 55

IV.    CONCLUSION ............................................................................................................ 57

**CERTIFICATE OF SERVICE** ........................................................................................ 57

**CERTIFICATE OF COMPLIANCE** ............................................................................. 58

**TABLE OF AUTHORITIES**

**Cases** Page(s)

*Abraham v. Singh*,
 480 F.3d 351 (5th Cir. 2007) ............................................................... 47, 50, 53

*Afshani v. Spirit SPE Portfolio 2006-1, L.L.C.*,
 2022 WL 964201 (5th Cir. Mar. 30, 2022) ......................................... 41

*Akers v. Newby*,
 2021 WL 7159936 (M.D. Fla. June 14, 2021) ................................... 27

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
 19 F.4th 145 (2d Cir. 2021) ................................................................ 17

*Arabian Am. Oil Co. v. Scarfone*,
 939 F.2d 1472 (11th Cir. 1991) .......................................................... 26

*ArmorSource, LLC v. Kapah*,
 2020 WL 1469473 (S.D. Ohio Mar. 26, 2020) ................................... 26

*Arruda v. Curves Int'l, Inc.*,
 861 F. App'x 831 (5th Cir. 2021) ...............................................*passim*

*Ashcroft v. Iqbal*,
 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................... 15, 31-32

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................. 15

*Bias v. Wells Fargo & Co.*,
 942 F.Supp.2d 915 (N.D. Cal. 2013) .................................................. 26

*Blachly v. United States*,
 380 F.2d 665 (5th Cir. 1967) .............................................................. 34

*Braswell Wood Co., Inc. v. Waste Away Grp., Inc.*,
 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010) ................................. 21, 22, 23

*Braswell Wood*,
 2010 U.S. Dist. LEXIS 80836, (M.D. Ala. Aug. 10, 2010) ............. 22

*Bridgewater v. Double Diamond-Delaware, Inc.*,
 2010 U.S. Dist. LEXIS 45790 (N.D. Tex. 2010) ............................. 53
 989 F.2d 733 (5th Cir. 1993) ............................................................. 37, 47, 48

*Cadle Co. v. Schultz*,
779 F.Supp. 392 (N.D. Tex. 1991) .................................................. 32

*Chris Albritton Constr. Co. v. Pitney Bowes Inc.*,
304 F.3d 527 (5th Cir. 2002) ...................................................... 33-34

*Clapper v. Am. Realty Investors*,
2016 WL 302313 (N.D. Tex. January 25, 2016) ........................... 49

*Clinton v. Sec. Ben. Life Ins. Co.*,
63 F.4th 1264 (10th Cir. 2023) .................................................. 34

*Com. Metals Co. v. Chazanow*,
2009 WL 3853704 (N.D. Tex. Nov. 17, 2009) .............................. 26

*Court to United States v. Warren*,
986 F.3d 557 (5th Cir. 2021) ..................................................... 43

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*,
528 F.3d 1001 (8th Cir. 2008) ................................................... 37

*Crowe v. Henry*,
43 F.3d 198 (5th Cir. 1995) ....................................................... 31

*D&T Partners v. Baymark Partners, LP*,
2022 U.S. Dist. LEXIS 83140 (N.D. Tex. 2022) ......................... 50

*Davis v. City of Alvarado*,
835 F. App'x 714 (5th Cir. 2020) ............................................... 16

*Efron v. Embassy Suites*
(Puerto Rico), Inc., 223 F.3d 12 (1st Dist. 2000) ....................... 51

*FD Prop. Holding, Inc. v. US Traffic Corp.*,
206 F.Supp. 2d 362 (E.D.N.Y. 2002) ......................................... 54

*Gemstone Foods, LLC v. AAA Foods Enterprises, Inc.*,
2022 WL 439538 (N.D. Ala. Feb. 12, 2022) ......................... 21, 23

*Gewecke v. US Bank N.A.*,
2011 WL 13136267 (D. Minn. June 6, 2011) .............................. 35

*Gonzalez v. Bank of Am.*,
2011 U.S. Dist. LEXIS 16963 (S.D. Tex. 2011) .......................... 37

*Guidry v. Bank of LaPlace*,
954 F.2d 278 (5th Cir. 1992) ..................................................... 19

*H.J., Inc. v. Northwestern Bell Telephone Co.*,
    492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed. 2d 195 (1989) ............................. 47, 48

*IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*,
    900 F.3d 640 (5th Cir. 2018) ................................................................ 41

*In re Checking Acct. Overdraft Litig.*,
    797 F. Supp. 2d ...................................................................................... 23

*In re Checking Acct. Overdraft Litig.*,
    797 F. Supp. 2d 1323 (S.D. Fla. 2011) ......................................... 21, 22

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ................................................................ 18

*In re Managed Care Litig.*,
    298 F. Supp. 2d 1259 (S.D. Fla. 2003) ....................................... 24, 25

*Kemp v. Am. Tel. & Tel. Co.*,
    393 F.3d 1354 (11th Cir. 2004) ........................................................... 34

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3rd Cir. 1993) ................................................................. 54

*Marriott Brothers v. Gage*,
    704 F. Supp. 731 (N.D. Tex. 1988) ............................... 17, 30, 42

*McCrae Assocs., LLC v. Universal Cap. Mgmt., Inc.*,
    554 F.Supp.2d 249 (D. Conn. 2008) ................................................. 39

*Mitchell Energy Corp. v. Martin*,
    616 F.Supp. 924 (S.D. Tex. 1985) ...................................................... 27

*Molina-Aranda v. Black Magic Enters., L.L.C.*,
    983 F.3d 779 (5th Cir. 2020) ......................................................... 41-42

*Moreover, McLendon v. Cont'l Grp., Inc.*,
    602 F. Supp. 1492 (D.N.J. 1985) ....................................................... 33

*Morganroth & Morganroth v. DeLorean*,
    123 F.3d 374 (6th Cir. 1997) ............................................................... 39

*Nerium Skincare, Inc. v. Nerium Int'l, LLC*,
    2018 U.S. Dist. LEXIS 194527 (N.D. Tex. 2018) ........................... 49

*Norfolk S. Ry. Co. v. Boatright R.R. Prods.*,
    2021 U.S. Dist. LEXIS 66658, (N.D. Ala. Apr. 6, 2021) ................. 24

*North Cypress Medical Center Operating Co. v. Cigna Healthcare*,
781 F.3d 182 (5th Cir. 2015) ............................................................. 54

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ............................................................. 46

*Percoco v. United States*,
598 U.S. 319, 143 S. Ct. 1130 (2023) ................................................. 32

*Price v. Pinnacle Brands, Inc.*,
138 F.3d 602 (5th Cir. 1998) ............................................................. 56

*Pro-Com Prod., Inc. v. Kings Express LA, Inc.*,
2019 WL 1771652 (C.D. Cal. Feb. 21, 2019) ................................. 39

*Ranieri v. AdvoCare Int'l, L.P.*,
336 F. Supp. 3d 701 (N.D. Tex. 2018) ............................... 17, 18, 42

*Rogers v. City of Yoakrum*,
660 F. App'x 279 (5th Cir. 2016) (per curiam) ......................... 18-19

*Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*,
111 F.Supp.2d 867 (S.D. Tex. 2000) ............................................... 25

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) ......................................................................... 26

*Simmons v. PV Welsh Lumber Company*
113 F.2d 812 (5th Cir. 1940) ................................................... 14, 27

*SK Hand Tool Corp. v. Dresser Indus., Inc.*,
852 F.2d 936 (7th Cir. 1988) ............................................................. 51

*Skilling v. United States*,
561 U.S. 358, 130 S. Ct. 2896 (2010) ............................................... 32

*SKS Constructors, Inc. v. Drinkwine*,
458 F.Supp.2d 68 (E.D.N.Y. 2006) ................................................... 46

*Stockwell v. Kanan*,
442 F. App'x 911 (5th Cir. 2011) ..................................................... 27

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 127 S. Ct. 2499 (2007) ............................................... 29

*Terrell v. Childers*,
1993 WL 433687 (N.D. Ill. Oct. 21, 1993) ..................................... 53

*Torres v. S.G.E. Mgmt., L.L.C.*,
838 F.3d 629 (5th Cir. 2016) .............................................................. 25

*Torrey v. Infectious Diseases Soc'y of Am.*,
86 F.4th 701 (5th Cir. 2023) ............................................................... 15

*TrueGreen Landcare, LLC v. Scott*,
512 F.Supp.2d 613 (N.D. Tex. 2007) ................................................. 47

*United Healthcare Services v. Next Health, LLC*,
2021 U.S. Dist. LEXIS 36084 at *18-19 ............................................. 44

*United States v. Adkins*,
741 F.2d 744 (5th Cir. 1984) ........................................................ 34-35

*United States v. Ahaiwe*,
2023 WL 4196954 (2d Cir. June 27, 2023) ........................................ 39

*United States v. Bollinger Shipyards, Inc.*,
775 F.3d 255 (5th Cir. 2014) ............................................................. 18

*United States v. Comstock*,
974 F.3d 551 (5th Cir. 2020) ............................................................. 25

*United States v. Curry*,
681 F.2d 406 (5th Cir. 1982) ............................................................. 32

*United States v. DiRosa*,
761 F.3d 144 (1st Cir. 2014) ............................................................. 39

*United States v. Doherty*,
969 F.2d 425 (7th Cir. 1992) ............................................................. 34

*United States v. Graham*,
51 F.4th 67 (2d Cir. 2022) ................................................................. 39

*United States v. Hoffman*,
901 F.3d 523 (5th Cir. 2018) ............................................................. 34

*United States v. Kimmel*,
777 F.2d 290 (5th Cir. 1985) ............................................................. 28

*United States v. Kreimer*,
609 F.2d 126 (5th Cir.1980) .............................................................. 40

*United States v. Persico*,
832 F.2d 705 (2d Cir. 1987) .............................................................. 37

*United States v. Rafsky*,
    803 F.2d 105 (3d Cir. 1986) ............................... 34

*United States v. Reed*,
    908 F.3d 102 (5th Cir. 2018) .............................. 30

*United States v. Riebold*,
    135 F.3d 1226 (8th Cir. 1998) ............................. 34

*United States v. Strother, No. 21-40592*,
    2023 U.S. App. LEXIS 29842 (5th Cir. 2023) ................ 30

*United States v. Torres Lopez*,
    851 F.2d 520 (1st Cir. 1988) .............................. 37

*Wave Length Hair Salons of Fla., Inc. v. CBL & Assocs. Properties, Inc.*,
    2017 WL 10604140 (M.D. Fla. Apr. 11, 2017) ............... 53

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
    90 F.3d 118 (5th Cir. 1996) ............................ 48, 49

*Xenos Yuen v. Triple B Servs. LLP, No. H-18-3277*,
    2019 U.S. Dist. LEXIS 119664 (S.D. Tex. 2019) ............ 17

*Young v. Wells Fargo & Co.*,
    671 F.Supp.2d 1006 & 1038 (S.D. Iowa 2009) ............... 27

*Zastrow v. Hous. Auto Imps. Greenway Ltd.*,
    789 F.3d 553 (5th Cir. 2015) .......................... 20, 21

## Statutes

18 U.S.C. §2 ...................................... xv, 43
18 U.S.C. §1962 ...................................... 54
18 U.S.C. § 1346 ...................................... xv
18 U.S.C. § 1961 .................................. xv, 47

## Rules

5th Cir. Rule 28.2.1 ........................... ii, xv, 58
Fed. R. App. P. 32 ............................... xv, 58
Fed. R. Civ. P. 8 ................................... xv
Fed. R. Civ. P. 9 ............................. xv, 16, 40
Fed. R. Civ. P. 12 .................................. xv

Fed. R. Evid. 404 .................................................................................. xv

# GLOSSARY OF ABBREVIATIONS AND TERMS

| | |
|---|---|
| Amend | Amend RE Advisors, LLC |
| Audit Rights | The specifically enumerated right for Munck to audit Landlord's calculation of Basic Costs and Excess Basic Costs as set forth in Section 3(d) of the Lease. ROA.855 |
| Banner Place | Commercial Property located at 12770 Coit Road, Dallas, Texas |
| Base Rent | Section 1(a) defines Base Rent to mean fixed amount plus Tenant's Pro Rata Share of any Excess Basic Costs. ROA.849 |
| Basic Costs | Section 1(c) defines Basic Costs to mean "all direct and indirect costs and expenditures of every kind incurred in connection with operating, maintaining, protecting, repairing, replacing, managing, and owning the Project . . .." ROA.849-850<br><br>The following specific subsections are implicated by Munck's audit reports:<br><br>(14) The wages and benefits of any employee who does not devote substantially all of his or her employed time to the **Project *unless such wages and benefits are appropriately prorated*** (but in no event above the level of property manager or engineer).<br><br>(15) Costs and the overhead and profit increment paid by Landlord to any subsidiary or affiliate of Landlord for goods or services (including accounting or asset management services) furnished to the Project, ***to the extent the same exceed the costs and the overhead and profit increment of such goods or services rendered by qualified, first-class unaffiliated third parties on a competitive basis***. |

| | |
|---|---|
| | (16) Rent for any office space occupied by Project management personnel *to the extent the size or rental rate of such office space exceeds the size or fair market rental value of office space occupied by management personnel of comparable buildings in the submarket where the Project is located.*<br><br>(ROA.850-851) (emphasis added) |
| Basic Services | Those specific "Building Standard" services as set forth in Section 7 of the Lease. ROA.856-857 |
| BOA | Brief for Appellant filed by Munck in this Court on December 20, 2023 [Dkt. 47] |
| Building Standard | Section 1(e) defines Building Standard to mean "the type, brand, quality, or quantity of materials, equipment, insurance coverages, methods, scheduling, usages, or services ***that Landlord may designate*** from time to time for minimum or exclusive use in the Project." ROA.851 (emphasis added) |
| Excess Basic Costs | Section 1(k) defines Excess Base Costs as being the "the amount (prorated for any partial calendar year) by which Basic Costs for that calendar year exceed Basic Costs for the Base Year, but Base Rent will never be reduced, even if Basic Costs for any calendar year are less than Basic Costs for the Base Year." ROA.852 |
| FAC | ROA.770-1122, Plaintiff's First Amended Complaint |
| Gaedeke | Gaedeke Holdings II, Ltd. |
| Gaedeke Lease/Lease | Lease Contract dated May 30, 2007 between Gaedeke Holdings II, Ltd. ("Gaedeke") and Appellant's predecessor which forms the basis of Appellant's claims |
| Gross-up | Section 1(k) provides that "Landlord shall gross-up all Basic Costs that vary with occupancy as if the Building has been 95% occupied and Building Standard services had been provided to the entire Building during that calendar year . . ." ROA.852 |

| | |
|---|---|
| Landlord | JP-Banner L.P. acquired Banner Place from Gaedeke in early 2017, inheriting the Lease |
| LBLIC | Liberty Bankers Life Insurance Company (Appellee/Defendant) |
| Munck/Appellant | Munck Wilson Mandala LLP (Appellant/Plaintiff) |
| OPEX | The parties' acronym for Basic Costs under the Lease |
| 2017 OPEX Report | 2017 Operating Expense Reconciliation Report |
| 2018 OPEX Report | 2018 Operating Expense Reconciliation Report |
| 2019 OPEX Report | 2019 OPEX Reconciliation Report |
| OrigC | ROA.20-369; Plaintiff's Original Complaint |
| Phillips | Bradford A. Phillips (Appellee/Defendant) CEO of LBLIC |
| RSM | RSM US, LLP |
| Sooner | Sooner National Property Management, L.P. (Appellee/Defendant) Landlord's affiliated property management company |

# STATEMENT OF THE ISSUES

1.    The District Court correctly granted Appellees' Motion to Dismiss Munck's RICO claims in its First Amended Complaint.

2.    The District Court correctly granted Appellees' Motion to Dismiss Munck's RICO conspiracy claims.

3.    The District Court correctly declined to exercise supplemental jurisdiction over Munck's state court claims.

4.    The District Court correctly denied leave to amend.

## STATEMENT OF THE CASE

## I.   PROCEDURAL HISTORY

Munck accurately described the proceedings below, except it failed to mention: 1) LBLIC and Phillips were not included in Munck's OrigC, ROA.20-369, and were only added to Munck's FAC after the original Defendants filed Motions to Dismiss, ROA.770-1122; and 2) after Munck filed its RICO Case Statement, the District Court held a hearing on the Motions to Dismiss during which Munck voluntarily dismissed its claims against Hall without prejudice.  ROA.2486-2487.[1]

## II.   CONTROLLING FACTUAL ALLEGATIONS SUPPORTING DISTRICT COURT'S DISMISSAL

The trial court accurately stated the background regarding Munck's RICO allegations.[2]  Nevertheless, Munck contends the District Court "gave short shrift" to its factual allegations, BOA.30, by ignoring the allegations BOA.31, or giving "no quarter" to Munck's factual allegations.   BOA.31. Munck's 14-page factual statement, that devotes less than a page to allegations of fraudulent overcharges, BOA.11-12, contains redundant, conclusory assertions utilizing unsupported hyperbole inconsistent with or directly contrary to, Munck's FAC exhibits and RICO Case Statement appendix.

---

[1] Hall joins this Brief in an abundance of caution, without waiver of her motion to dismiss for lack of subject matter jurisdiction.

[2] ROA.2160-2164.

## A.    Munck's Lease with Gaedeke

The District Court found, and Munck grudgingly admits, Munck's OPEX fraud claim arises out of a Lease initially executed by Munck's predecessor and Gaedeke in May 2007.  ROA.845-903.  That Lease was amended 6 times--only the last of which, the Sixth Amendment, was between Munck and JP-Banner, L.P.[3]  The Lease provisions underlying Munck's OPEX fraud allegations were not amended.[4]

## B.    Key Lease Provisions regarding OPEX

Appellees have reproduced the basic lease provisions at issue in its Glossary of Abbreviations and Terms.

## C.    Munck Exercises its OPEX Audit Rights

Munck alleges that by email dated May 23, 2019 it received a revised 2017 OPEX Report and 2018 OPEX Report.  FAC¶56, ROA.783.  As a result, Munck retained its real estate broker, Amend, to conduct an audit of Landlord's Basic Costs for calendar years 2017 and 2018 which was completed by October 31, 2019, and which is, in its entirety, attached as Exhibit 6 to Munck's FAC, ROA.945-965.  The Report does not allege Appellees failed to provide any underlying information necessary allow it to audit Landlord's calculations. *Id.*

On January 6, 2021, Munck alleges it received the 2019 OPEX Report. FAC¶56, ROA.783.  For the 2019 audit, Munck retained RSM to conduct the audit

---

[3] *See* Amendments 1-5, ROA.904-945 and Sixth Amendment, ROA.926-929.
[4] *Id.*

instead of Amend, and RSM issued a report on July 8, 2020. AC, Ex. 7, ROA.966-997. As with the Amend audit, the RSM audit included a review, analysis, and assessment of the Lease Operating Expenses. ROA.971. Other than a passing reference to an unanswered inquiry regarding property management fees Sooner charged unaffiliated clients, consistent with Amend's report, the RMS Report made no allegation Appellees failed to provide any requested information. ROA.971.

### D. The Audit Reports' Findings are Contrary To Or Do Not Support Munck's Allegations of OPEX Fraud

Munck's FAC claims as injuries the amount of adjustments suggested by the two Audit Reports, and alleges Appellees engaged in "false," "fraudulent," "fictitious," "bogus," "deceptive," "misleading," "stealing," "ill gotten," "a fiction," "dishonest," "a bilking," "funneling," "syphoning," and "nefarious" conduct. However, neither Audit Report uses those words or makes those allegations. Specifically, the Audit Reports do not allege: (1) false or fictitious invoicing; (2) Landlord's claimed expenses were not actually paid to third-party vendors; or (3) expenses were artificially inflated. In its Brief, Munck references just 4 charges it alleges were fraudulent, pointing to the FAC, while ignoring the audit reports findings altogether. BOA.12. Read objectively, the audit reports ***do not*** support Munck's conclusory pleadings.

***First***, Munck alleges Appellees charged the ***entirety*** of its employees' compensation in violation of Lease §1(c). BOA.12. However, §1(c) allows

apportionment if "***such wages and benefits are appropriately prorated***." ROA.850.
Munck's auditor acknowledged payroll costs were allocated but disagreed regarding
bonus treatments. ROA.949, ROA.954-955. While criticizing the amount charged,
he ignored the Gross-Up language in §1(k) and based his analysis on a comparable
property with a 50% occupancy rate. ROA.949. For RICO purposes, the auditor
made no allegation Appellees concealed information or otherwise engaged in fraud
regarding those charges.

*Second*, Munck contends Appellees fraudulently charged for janitorial and
security services which were not performed. BOA.12. However, the auditor relied
on Munck's letters complaining about the *quality* of such services. ROA.951,
ROA.961-962. ROA.964-965. For RICO purposes, the auditor made no allegation
such charges were not incurred or payments were artificially inflated or based upon
fictitious third-party invoices. ROA.951

Notably, Munck's letters, sent 3 years before it sued, conspicuously omit the
flowery language from its FAC. Moreover, neither of the 2019 letters allege
Appellees: (i) artificially inflated expenses, or (ii) charged for, but did not pay, third-
party vendors. Indeed, the entire basis for Munck's claimed adjustments in 2019
related solely to the "quality" and "quantity" of Basic Services provided at
Landlord's discretion under §1(e). Further, Munck's contentions regarding
perceived deficiencies with security focus on services which are not required to be

provided under Lease §7.  For example, Munck complained: (i) security was not performing security checks in its Premises, and (ii) Landlord failed to provide access control devices for its Premises.  But §7(i) only required Landlord to provide a lobby courtesy guard, which it did; and §7(h) only required Building access controls—not the Premises.   Under  §13,  Premises-specific  access  controls  are  Munck's responsibility--not Landlord's.

*Third*, Munck alleges Sooner and Landlord "charged for janitorial supplies that Sooner did not purchase" because the auditor concluded such supplies were the third-party vendor's responsibility under its contract with Landlord.  BOA.12.  However, the auditor also noted Gaedeke charged for such items as restroom supplies.  ROA.950.  For RICO purposes, no allegation was made by the auditor such expenses were not incurred, fictitious, inflated, or the Landlord or Sooner had concealed the true nature of the charges.

Finally, Munck contends Landlord and Sooner fraudulently "charged for non-chargeable  office  renovations  represented  as  'HVAC  repair,'"  comprising $16,253.74 in charges were categorized as HVAC/safety repairs in the general ledger. BOA.12.  The auditor concluded the invoices had been miscategorized, and recommended a deduction from Basic Costs.   For RICO purposes, the auditor made no allegations of fraud and noted the adjustment resulted from the provision, not concealment, of underlying invoices related to the expenses.

### E.    The Sole References to Auditor's Reports

In its SOC, Munck makes only 2 references to auditor's reports remotely related to fraudulent OPEX charges: (i) Amend commented "we have never before seen this level of erroneous and inappropriate charges in an audit of operating expense reconciliation" ROA.945, and (ii) RSM alleged there were "unsupportable and unsubstantiated charges." ROA.975.   For RICO purposes, neither auditor claimed any fraud or concealment.

Amend's audit report resulted in adjustments to 15 expense categories for 2018, and 12 for 2017, many of which are duplicative of 2018.  ROA.947-948.  The vast majority of adjustments fell into 5 categories:   affiliated salaries; janitorial services; security services, and separate categories entitled "excludable management fees" and "gross-up" calculations--not referenced as fraudulent charges in Munck's BOA.   Amend determined the Sooner management fee, set by contract and fully disclosed at a rate of 5%, was, in his opinion, well above market-comparables and adjusted it to 1.75%, ignoring the fee charged by Gaedeke, the prior landlord. ROA.948.    ROA.975.  When RSM audited, it noted Gaedeke charged 4% for its affiliated management company and adjusted Sooner's management fee to the same 4%. ROA.975.

The final category of significant adjustments for both audit reports is the "gross-up" amount.   While both auditors disagreed with the Landlord/Sooner's

detailed and complex calculation of that amount under the Lease terms, for RICO purposes neither alleged (or suggested) Landlord/Sooner's calculation constituted fraud or anything other than a disagreement regarding the Lease terms as it related to methodologies to be used to make the calculation.

### F. Munck's RICO Statement Offers No Additional Detail Regarding Allegations of OPEX Fraud

At FAC¶167, ROA.823-829, and in Munck's RICO Case Statement, ROA.1894-1896, Munck itemized 20 acts it contends are RICO predicates. Notably, despite the fact Munck provided 10 FAC exhibits and a 33 document appendix supporting its RICO Case Statement, only 2 of the 20 communications are included in the body, one from 11/29/16 and one from 5/24/22 (regarding Phillips, addressed below).

The 2016 email demonstrates disclosure--not fraud. Munck first referred to this email in his OrigC and alleged Appellees represented the overall operating costs of the building would **decrease**. ROA.24. However, Munck omitted the email's attachments from the email exhibit attached to the OrigC. The omitted attachments contained 10-year pro-forma financial projections projecting **increases** in OPEX each year. ROA.1191-1203.

Rather than acknowledge this, Munck's FAC doubled-down and referenced the email as a predicate act, claiming it stated inflated projected expenses. ROA.823.

Notably, the 2019 OPEX were almost $300,000 less than the amount projected. ROA.943.

Regarding the remaining 18 purported predicate acts, 8 occurred before transmission of OPEX reports for calendar years 2017 and 2018, on May 23, 2019. Of those, 2 relate to emails transmitting financial statements provided to Munck when it was still an investor in Banner Place, and the balance relate to correspondence and communications regarding janitorial or security services. All predate the letters Munck penned supporting its auditor's reports for those years at year-end 2019. ROA.961-962, 964-965. The rest relate to either transmission of challenged OPEX reports or follow-up emails responding to proposed adjustments proposed by Munck's auditors.

## G. LBLIC and Phillips were not involved in Banner Place during the alleged acts and omissions giving rise to Munck's claims.

At FAC¶160, Munck judicially admits LBLIC did not acquire JP Banner's financing package from its then-lender until June 30, 2020. ROA.821. At FAC¶159, Munck judicially admits LBLIC's predecessor-in-interest extended a loan to JP-Banner to acquire Banner Place. *Id.* Accordingly, LBLIC was not party to the original Lease between Gaedeke and Munck, nor was LBLIC involved in the negotiations or dealings that led to JP-Banner's 2017 acquisition of Banner Place. Put simply, LBLIC was not involved in Banner Place during the alleged acts and omissions giving rise to Munck's claims.

Neither LBLIC, nor its CEO Phillips, were sued or named as party Defendants in Plaintiff's OrigC, ROA.20-369; however, LBLIC was referenced. Allegedly, based upon an "investigation," Munck noted LBLIC had other financing relationships with other projects owned/controlled by Jordan.[5] Tellingly, in its OrigC at ¶99, Munck judicially admits:

> It is *unknown* what JP-Banner disclosed to LBLIC regarding Plaintiff's claims of damages. It is also *unknown* to Plaintiff whether JP-Banner has withdrawn any capital reserves. If any reserves have been withdrawn, at most a *de minimus* amount of these funds have been used for tenant improvements.

ROA.56 (Italics added).

Indeed, after filing its OrigC, Munck wrote LBLIC and Phillips. ROA.2133-2134. In that letter, Munck: 1) noted based upon its investigation into the allegations contained in its OrigC, it discovered an ongoing financial relationship between LBLIC and Jordan (and his related entities): 2) indicated it understood LBLIC funded purchases of buildings by Jordan (and his related entities) or purchased loans from a third-party lender via assignment after they were acquired by Jordan (and his related entities); 3) noted circumstances where LBLIC purchased third-party loans, it contemporaneously increased the amount of the purchased third-party loan; and 4) reflected the financial relationship between LBLIC, Jordan, and its related entities,

---

[5] See n.15, p.36 of Plaintiff's Original Complaint. ROA.55.

included other entities.  ROA.2133.  However, despite all those factual recitations (which as will be discussed are identical to FAC factual allegations regarding Phillips' and LBLIC's participation in a RICO enterprise), Munck concluded it did "***not suggest that LBLIC is engaged in any impropriety***."  (Emphasis added). ROA.2133.

Shortly thereafter, Munck added LBLIC and its CEO Brad Phillips as Defendants in its FAC.  Munck's factual allegations were virtually identical to those in Munck's OrigC. *See* ¶¶15-17, 137-139, 159-161.[6]  Summarizing, those factual averments are:  (1) since June 30, 2020, LBLIC was secured mortgage lender of Munck's landlord, JP-Banner; (2) based on allegations of non-parties and other litigation, Jordan and Phillips are "life-long" friends; and (3) LBLIC either provided purchase money financing or acquired existing financing on other projects owned or controlled by Jordan.[7] Despite Munck's judicious use of dog whistles/buzzwords, none of these allegations evidence any illegal or improper activities.

At FAC ¶17, ROA.775, and despite its admissions in its OrigC, Munck contended Phillips either had direct control of the "Sooner Enterprise" or is "aware of or participated in its activities."  The only particularity offered is a reference in footnote 7 to FAC¶¶137-139, 159-161. ROA.816, 821-822.  However, a review of

---

[6] ROA.816, 821-822.
[7] The same factual allegations did not give rise to suggestion of impropriety a few days earlier.

those provisions reveals nothing more than a lending relationship between LBLIC and other entities owned or controlled by Jordan and allegations, identical to those in the OrigC regarding LBLIC's acquisition of JP-Banner mortgage financing in June 2020.

Tellingly, LBLIC was not a lender on Banner Place in 2017-2019, the years the alleged OPEX conduct relates to and occurred and was a lender only at the time of transmission of 2019 OPEX. Moreover, save 1 (of 20) an email from Jordan to Munck dated 5/24/22, ROA.1967-1968, there is no allegation LBLIC knew of any predicate acts Munck alleged at ¶167, ROA.823-829, nor that it agreed to engage in such acts.

The 5/24/22 email references diligent efforts to resolve issues regarding Munck's occupancy at Banner Place, including their desire to terminate the Lease a year early. The email notes that type of lease modification would require LBLIC's consent and proposes Munck consider relocating elsewhere. On its face, the email does not specifically reference OPEX, overcharges, or Munck's Audit Reports regarding OPEX for 2017, 2018, and 2019. Nor does it contain any representation of material fact which Munck contends is false, fictitious, or fraudulent.

Further, Munck's allegations regarding intent regarding Phillips and LBLIC pertain to time periods *before* they were even involved with Banner Place or the Lease. The only allegations mentioning Phillips's or LBLIC's purported intent

regarding OPEX is in FAC¶116 and it is conclusory.  ROA.797-798.  Munck

provides no plausible allegations from which one could infer Phillips or LBLIC had

knowledge of any purported wire or mail fraud or intent to contribute to it, let alone

to act as leader of the so-called scheme.  Commercial secured lending, determining

the amount of loans, and making fees on those loans by a lender are perfectly legal

activities—not fraud.  And it is not any kind of wrong, much less fraud, for a lender's

CEO to have a longtime friend.  Nor is it fraud for a lender to refinance a borrower's

loan even at a time when a borrower's affiliate has been alleged to have engaged in

wrongdoing pertaining to other business dealings to which the lender is a stranger.

## SUMMARY OF THE ARGUMENT

This Court recently observed in *Arruda v. Curves Int'l, Inc.*, 861 F. App'x 831,

836 (5th Cir. 2021) it must be wary of transforming business contracts or fraud

disputes into Federal RICO claims. Consistent with this vigilance, courts have

uniformly determined allegations of overcharges pursuant to or arising from

commercial contracts alone do not constitute misrepresentations for purposes of

RICO.  Here, the District Court rightly looked through the conclusory allegations,

rhetoric, and hyperbole Munck employed in characterizing the fraudulent nature of

the alleged RICO conduct and relied instead on the Lease terms which give rise to

the dispute and the audit reports Munck obtained from independent auditors it

retained which were contrary to its conclusory allegations in the FAC and

controlling.  *See Simmons v. PV Welsh Lumber Company* <u>113 F.2d 812, 813</u> (5th Cir. 1940).  The District Court correctly determined Munck failed to recast its breach of contract claims into RICO wire and mail fraud.  Its judgment should be affirmed.

Another reason this Court should affirm the District Court's judgment dismissing Munck's RICO claims is because while Munck lists various purported predicate acts of mail/wire fraud, those allegations relate to and arise out of OPEX reports delivered under the terms of the lease for calendar years 2017 and 2018 delivered in early 2019 and a separate report for calendar year 2019 delivered in 2020.  Those reports evidence, at best, there is a single victim, a single alleged plan or scheme and at most three discrete acts.  The District Court correctly determined Munck failed to sufficiently allege a pattern of racketeering activity.

Additionally, the District Court correctly determined Munck failed to allege RICO conspiracy given the absence of RICO fraud and a pattern of racketeering activity.

Moreover, since the District Court properly dismissed Munck's RICO claims, it correctly declined to exercise supplemental jurisdiction over Munck's remaining state law claims.

Finally, as Munck already had two bites at the apple, and a chance at its best shot to articulate claims in connection with the District Court's order that it file a detailed RICO Case Statement, leave to amend was properly denied.

Accordingly, the District Court's Memorandum Opinion and Order and Judgment pursuant thereto should be in all things affirmed.

## ARGUMENT

I.   **STANDARD OF REVIEW**

   A.   **Motion to Dismiss**

A 12(b)(6) dismissal for failure to state a claim is reviewed *de novo*. *Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 703-04 (5th Cir. 2023).

Well-pled facts are accepted as true and viewed in the light most favorable to the plaintiff but this Court disregards "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (citation omitted).

A complaint that fails to state a facially plausible claim must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "Facial plausibility" means "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; ROA.2255. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

Notably, despite having been relied on by the District Court in her opinion, Munck does not cite or discuss *Iqbal* in its brief. ROA.2255. Munck's RICO claims allege fraud and are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). While Munck cursorily acknowledges a complaint must contain "more than labels and conclusions" [which is true but only part of the story as the cases discussed above illustrate], Munck cites *Twombly* for the proposition the complaint "need not contain detailed allegations." However, *Twombly* is a Rule 8(a) case—not a Rule 9(b) case; therefore, Munck's declaration is inapplicable to RICO claims predicated on fraud. *See Williams v. WMX Techs. Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); Fed. R. Civ. P. 9(b).

## B.     Rule 9(b)

To comply with Rule 9(b), plaintiff must, "at a minimum," provide the "who, what, when, where, and how" of the alleged fraud. *Arruda,* 861 F. App'x at 834 (citations omitted). Therefore, Munck had to plead the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Davis v. City of Alvarado*, 835 F. App'x 714, 720 (5th Cir. 2020) (citations omitted). Moreover, what the person obtained by the fraud must also be pled with particularity. *Williams,* 112 F.3d at 177. As the *Williams* Court noted "[i]n short, we apply the rule with force, without apology." *Id.* at 178.

Importantly, the allegations must "inform each defendant of the nature of his alleged participation in the fraud. *Xenos Yuen v. Triple B Servs. LLP*, No. H-18-3277, 2019 U.S. Dist. LEXIS 119664, at *19-20 (S.D. Tex. 2019); *Marriott Brothers v. Gage*, 704 F. Supp. 731, 740 (N.D. Tex. 1988) ("Rule 9(b) also requires that the plaintiffs plead with particularity the representations made by each defendant."), *aff'd* , 911 F.2d 1105 (5th Cir. 1990). It is not enough for Munck to attribute vaguely the alleged fraudulent activity to "defendants" collectively. *Xenos Yuen*, 2019 U.S. Dist. LEXIS 119664, at *20.

Munck cites *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 150 (2d Cir. 2021) and its warning Courts "must be careful not to mistake heightened pleading standards for impossible ones." Munck fails to explain *Altimeo* is a securities fraud case where the particularity requirements of Rule 9(b) are statutorily enhanced by the PSLRA.

For claims alleging fraud, scienter allegations must also meet the heightened pleading requirements of Rule 9(b). *See Marriott Bros.,* 704 F. Supp. at 740. Thus, while "intent can be averred generally . . . a RICO mail fraud averment must nonetheless provide some 'factual basis for conclusory allegations of intent,' which must, in turn, give rise to a 'strong inference' of fraudulent intent." *Id.; see also Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 716 (N.D. Tex. 2018). And to establish a RICO claim based on a pattern of mail or wire fraud, Munck was also

required to plead Defendant "act[ed] knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself." *Id.* (citing *United States v. Akpan*, 407 F.3d 360, 370 (5th Cir. 2005).

Munck cites *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255 (5th Cir. 2014) contending: 1) courts "err[] by requiring [fraud plaintiffs] to plead … knowledge element with particularity under Rule 9(b);" 2) knowledge "need only be pled plausibly pursuant to Rule 8;" and 3) alleged facts are sufficient to infer fraud if they either show a defendant's motive to commit the wrongful acts, or identify circumstances that indicate conscious behavior on the part of defendant. Munck raises these arguments (along with *Bollinger*) for the first time on appeal. They have been waived. *Arruda*, 861 F. App'x at 836.

### C. Exhibits, RICO Case Statement, and Attachments

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). And "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (*quoting United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)). *See*

*Simmons,* [113 F.2d at 813](#) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."); *Stockwell v. Kanan*, [442 F. App'x 911, 913](#) (5th Cir. 2011)(same).

In addition to facts well-pleaded by the complaint, the Court considers the facts well-pleaded by the RICO Case Statement. *Guidry v. Bank of LaPlace*, [954 F.2d 278, 281](#) (5th Cir. 1992).

### D.     Munck's Waiver

On review of a 12(b)(6) dismissal, arguments Plaintiff did not raise to the District Court are waived and will not be considered by this Court. *See Arruda* [861 F. App'x at 836](#). There are numerous instances of waiver by Munck that will be addressed throughout this brief. When waiver is raised by Appellees, they incorporate this Section by reference.

### E.     Affirmance of the District Court Opinion

This Court "may affirm a Rule 12(b)(6) dismissal on any grounds supported by the record." *Arruda,* [861 F. App'x at 833](#) (citations omitted).

## II.     THE RICO CLAIMS WERE PROPERLY DISMISSED

### A.     Munck Did Not Plausibly Allege Racketeering Activity.

#### 1.     Munck's Claims Amount Only to a Lease Dispute. [Responsive to BOAII.A.1.]

"Breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud. It is correspondingly difficult to recast a dispute about broken promises into a claim of racketeering under RICO." *Arruda,* [861 F. App'x at 836](#).

"The district court properly granted summary judgment on Zastrow's breach of contract claim dressed in civil RICO garb."[8]  *Zastrow*, 789 F.3d at 562.

Munck brings RICO claims on predicate acts of mail and wire fraud which require, among other things, "a scheme to defraud."  ROA.2167.  Yet Munck's purported RICO claims are nothing more than a garden-variety breach of contract claim against its landlord fluffed and puffed with hyperbole, conclusory allegations, unwarranted factual inferences, and legal conclusions.

The gist of Munck's first argument is the District Court misconstrued the law because overbilling under a contract, standing alone, constitutes a RICO claim.  It does not.  Something more than breach of contract is required for a RICO violation. The caselaw cited by Munck does not support its argument.

a.       **The District Court correctly construed the law.**

The court below determined Munck's allegations arising out of its tenancy at Banner Place cannot sustain a RICO claim. ROA.2169.  The court concluded Munck had not managed to recast its allegations regarding inflated OPEX fees and missing services into anything more than a breach of contract claim based on a disagreement

---

[8] In *Zastrow*, the summary judgment motion solely challenged the sufficiency of Plaintiff's pleadings and was reviewed under a motion to dismiss standard.  *Zastrow v. Hous. Auto Imps. Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015).

with charges levied under the Lease. *Id.* In making that determination, the court relied upon this Court's recent opinions in *Arruda,* 861 F. App'x at 831 and *Zastrow,* 789 F.3d at 553 as well as other authorities. ROA.2168.

The District Court held to constitute mail or wire fraud sufficient to state a predicate act under RICO requires something more than allegations fees or charges were improperly assessed under the Contract. ROA.2171. It further held although the FAC is replete with language stating that Defendants "concealed" or falsified reports and invoices, the only alleged falsities identified are the disputed OPEX expenses which do not qualify as "misrepresentations" sufficient to plead mail/wire fraud (given the absence allegations satisfying Rule 9(b) regarding falsified documents, invoices, reports, or the like—and lack of fraudulent concealment) relying upon *Gemstone Foods, LLC v. AAA Foods Enterprises, Inc.,* 2022 WL 439538, at *8 (N.D. Ala. Feb. 12, 2022); *In re Checking Acct. Overdraft Litig.*, 797 F. Supp. 2d 1323, 1332 (S.D. Fla. 2011); and *Braswell Wood Co., Inc. v. Waste Away Grp., Inc.*, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010), among others. ROA.2170-2172.

At BOA.28-29, Munck complains the "District Court mainly relied on *Gemstone*, where the court actually ***denied*** summary judgment on overbilling claims under RICO, recognizing such claims could be a component of a RICO scheme to

defraud."[9]  But, the District Court did not imply otherwise.  Instead, it recognized the *Gemstone* facts (which included evidence of concealed/undisclosed facts) could give rise to a RICO claim.  ROA.2170-2171.  Its only other cite to *Gemstone*, is parenthetical as (citing cases) which reflect the dichotomy between cases (i) involving a dispute about charges authorized under a contract but allegedly improperly assessed (as here)—for which no RICO claim lies, and (ii) those in which concealed fees not allowed under a contract are alleged or other independently fraudulent conduct incident to the invoicing is alleged— for which a RICO claim exists. *See id.* at *27. [10]

In the first category, *Gemstone* discussed *Braswell Wood,* 2010 U.S. Dist. LEXIS 80836, (M.D. Ala. Aug. 10, 2010) and *In re Checking Acct. Overdraft Litig.*, 797 F. Supp. 2d 1323 (S.D. Fla. 2011).  *Braswell* involved a contract between defendant, a waste collection/disposal company, and plaintiff, the defendant's customer, which permitted defendant to levy surcharges for increased costs in certain circumstances. Plaintiff brought a RICO claim based on mail fraud, alleging Defendant billed for fuel surcharges unrelated to Defendant's actual fuel

---

[9] Ironically, Munck *suggested Gemstone* to Judge Lynn in its Response to the Motion to Dismiss. ROA.1505.
[10] The other cases cited by Munck conform to this dichotomy—such as the creation of fictitious invoices, fraudulent invoices, and concealment.

costs. The district court dismissed the RICO claim because Plaintiff failed to plead a misrepresentation finding, among other things:

> …[t]he contract provided for certain types of charges. The fact those charges were possible via the terms of the contract cannot have been a misrepresentation in itself. Invoices received by customers reflected those charges had been levied in various amounts. Neither was that a misrepresentation; it was entirely true that [the defendant] was levying fuel, landfill, and other surcharges in those amounts. Whether those amounts were appropriate or correct under the contract was another matter, but every incipient billing dispute is not a "misrepresentation" from the time a bill is mailed to a customer, even if the customer ultimately prevails on the merits of the dispute.

*Braswell Wood*, 2010 U.S. Dist. LEXIS 80836, 2010 WL 3168125, at *4 (footnote omitted).

*Checking Acct. Overdraft Litig* dismissed a RICO claim concerning overcharges for overdraft fees:

> Like the *Braswell Wood* court, this Court finds that wrongful overcharges, at least under these facts and when  permitted by contract, are not synonymous with the meaning of 'misrepresentation' in the context of the RICO statute. Plaintiffs' RICO claims are the proverbial square peg in the round hole, and Plaintiffs should not be permitted to alchemize their claims for breach of contract into ones for civil RICO conspiracy."

*In re Checking Acct. Overdraft Litig.*, 797 F. Supp. 2d at 1332 (footnote omitted).

As the *Gemstone* Court noted, "in *Braswell Wood* and *In re Checking Acct. Overdraft Litig.*, the fees at issue were authorized by contract; the plaintiffs alleged that the authorized fees were assessed improperly." *Gemstone Foods,* 2022 U.S. Dist. LEXIS 25483, at *27.

The cases analyzed in *Gemstone* supporting a RICO claim, *Norfolk S. Ry. Co. v. Boatright R.R. Prods.*, 2021 U.S. Dist. LEXIS 66658, (N.D. Ala. Apr. 6, 2021) and *In re Managed Care Litig.*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003), involved allegations of concealed fees not allowed under a contract or other independently fraudulent conduct incident to the invoicing. *Gemstone* explained in *Norfolk S. Ry. Co.,* defendants fraudulently misrepresented their intention to perform under the contract by using counterfeit substances and false treatment reports to conceal that they were using less chemical preservative than required. *Id.* at *21. Moreover, in *In re Managed Care Litig.*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003), the RICO claims against defendants based on mail fraud alleged defendants "fail[ed] to disclose secret cost containment mechanisms—such as the use of computer software to review claims—that Defendants allegedly use to deny, diminish and delay payment for covered, medically necessary services," and used "'cost-based or other actuarial criteria unrelated to [contractual and quasi-contractual] requirements to approve and deny claims submitted by Plaintiffs and the class." *Id.* On those allegations, *Managed Care* held (as *Gemstone* notes) "contractual settings can provide the context for RICO mail fraud claims if there is a pattern of misrepresentations amounting to both a scheme to defraud and racketeering activity," and "[c]oncealment of critical data, even without a formalized duty to disclose, may also constitute mail and/or wire fraud in certain situations.") *Id*. at *22.

While in *Gemstone* the Court determined there were fact issues precluding summary judgment on Plaintiff's RICO claim, it did so based on the dichotomy, finding *Gemstone* traveled under a different theory than *Braswell Wood* and *In re Checking Acct. Overdraft Litig.* because of the litany of matters not disclosed or concealed by Defendants. *See id.* at *27-31. While *Gemstone* provides the analysis and dichotomy, its facts are distinguishable.

Further, while Munck cites several cases for the first time in this Court to support its contention that allegations of overcharging, standing alone, can constitute fraud for purposes of RICO, a close review of all the cases cited demonstrates in each instance something other than mere overcharging was alleged. That "other" includes participation in pyramid schemes, allegations of inflated or fictitious invoices, false or fabricated invoices or documents, concealment, or other fraudulent conduct such as kickbacks or embezzlement. A summary of that caselaw and the ***other*** elements required to support a RICO fraud allegation follow:

- *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 639 (5th Cir. 2016) (fraudulent pyramid scheme);

- *Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 111 F.Supp.2d 867, 873 (S.D. Tex. 2000) (filing forms with State regulators containing false representations about expenses and rates, pass-through of full expenses despite false filings);

- *United States v. Comstock*, 974 F.3d 551, 557 (5th Cir. 2020) (false invoices that did not accurately reflect the number of hours of janitorial work provided);

- *Arabian Am. Oil Co. v. Scarfone*, 939 F.2d 1472, 1478 (11th Cir. 1991) (fraudulent billing and forged documents);

- *Advanced Reimbursement Sols. LLC v. Aetna Life Ins. Co.*, 2022 WL 889058, at *5, 8 (D. Ariz. Mar. 25, 2022) (misrepresentation of licensure, billing rates, and services actually rendered to members; and billing for uncovered and experimental treatments);

- *Cafe, Gelato & Panini LLC v. Simon Prop. Grp., Inc.*, 2022 WL 17987098, at *7 (S.D. Fla. Mar. 22, 2022) (providing inflated invoices in excess of actual amount of electricity consumption and concealment through denial of independent audits);

- *ArmorSource, LLC v. Kapah*, 2020 WL 1469473, at *5, 8 (S.D. Ohio Mar. 26, 2020) (allegations of false invoices despite the provision of no services and kickbacks, embezzlement);

- *Weiner v. Ocwen Fin. Corp.*, 2015 WL 4599427, at *10 (E.D. Cal. July 29, 2015) (disguising unlawful markups of services provided by third parties, providing statements concealing true nature of marked-up service fees, failing to provide borrowers with accurate documentation and passing-through fees);

- *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 484 (1985) (overbilling scheme including "inflated bills" and "nonexistent expenses");

- *Bias v. Wells Fargo & Co.*, 942 F.Supp.2d 915, 939 (N.D. Cal. 2013) (creating impression third-party invoices were paid despite payment of an agreed upon lesser amount);

- *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013) (use of sham transactions, phony invoices, shell companies, kickbacks, and a corporate structure used to hide costs falsely);

- *Com. Metals Co. v. Chazanow*, 2009 WL 3853704, at *5 (N.D. Tex. Nov. 17, 2009) (concealing ownership in alleged third-party vendor and approving such vendor's fraudulent and overstated invoices);

- *Cypress/Spanish Ft. I, L.P. v. Pro. Serv. Indus., Inc.*, 814 F.Supp.2d 698, 711-12 (N.D. Tex. 2011) (allegations of bribes and intimidation to coerce employees to generate fraudulent reports, including allegations

of bribes and kickbacks);

- *Mitchell Energy Corp. v. Martin*, <u>616 F.Supp. 924, 927-28</u> (S.D. Tex. 1985) (allegations of payments for goods and services never received);

- *Young v. Wells Fargo & Co.*, <u>671 F.Supp.2d 1006, 1021</u> & 1038 (S.D. Iowa 2009) (systematic scheme to charge excessive fees and conceal those fees for mortgagors);

- *Akers v. Newby,* <u>2021 WL 7159936</u>, at *3 (M.D. Fla. June 14, 2021) (pass-through of ad valorem tax concealed and fraudulently billed);

- *Coleman v. Commonwealth Land Title Ins. Co.,* <u>684 F.Supp.2d 595</u>, 616 (E.D. Pa. 2010) (conditioned upon RESPA requirements that information reflected on Uniform Settlement Statements be true and correct. *citing* <u>12 USC §2603</u>).

        b.    **The District Court properly reviewed Munck's allegations.**

Munck's entire RICO claim rests on its contention it was the victim of fraudulent, concealed, and/or fictitious OPEX charges under the Lease. However, "[W]here there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Simmons v. Peavy-Welsh Lumber Co.*, <u>113 F.2d 812, 813</u> (5th Cir. 1940); *Stockwell v. Kanan*, <u>442 F. App'x 911, 913</u> (5th Cir. 2011). Munck admits it exercised its Lease rights and engaged third-party auditors to conduct Lease Audits of the OPEX reported by JP-Banner, LP for 2017, 2018, and 2019. Indeed, Munck argues it learned of the fraud from the Lease audits and it attached the Lease, and the Lease Audit Reports to its FAC.

The Lease Audit Reports, and the Lease directly conflict with Munck's self-serving mischaracterizations of the OPEX and other charges as fraudulent, fictitious,

concealed or any of the other hyperbolic terms it has used to try and garb itself in a federal RICO claim.  *See* Section II.C. and D. above.  The Lease Audit Reports, which tellingly, Munck specifically cites in its Brief to this Court only 4 times, do not reflect fraud, fiction, concealment, or anything other than a contract dispute under the Lease with differing interpretations of Lease terms. *See* Section II.C. above.

As the District Court correctly found, *all* Munck's complaints regarding alleged overcharging stem from the OPEX reports Appellees provided, which Munck was allowed to audit.  Although Munck's auditors complained of the inclusion of certain expenses or calculation of certain charges, they made no allegations regarding altered figures, fictitious invoices, or failure to disclose key information.

Munck's cite to *United States v. Kimmel*, 777 F.2d 290, 293 n.1 (5th Cir. 1985) is disingenuous.  *Kimmel* is a criminal case and the point Munck cites it for ("half-truths calculated to mislead are actionable under the wire/mail fraud statute even without duty to disclose") is made in connection with a good faith defense instruction.  Moreover, this Court has recently made clear "[a] plaintiff may rely on nondisclosure as 'proof of a scheme to defraud only where the defendant is under a duty to disclose.'" *Arruda,* 861 F. App'x at 834.

Munck cites no Fifth Circuit RICO case requiring "holistic" review of pleadings allegations. Instead Munck cites inapposite securities fraud cases requiring a holistic review under the PLRSA. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326, 127 S. Ct. 2499, 2511 (2007) (requiring holistic review of securities fraud cases under PLRSA).

Munck's contention the "District Court gave no quarter to the fact Munck alleged, inter alia, non-disclosure of material information regarding salaries and bonuses of certain employees, and charges for renovations to Sooner and Jordan's own offices" (BOA.31) is simply not true. As discussed in the SOC Section II.D. above, the Audit reports regarding these charges do not support Munck's conclusory allegations.

In short, far from violating the motion to dismiss standard, the District Court reviewed the plausible controlling allegations carefully considering the detail in the Exhibits and RICO Case Statement Munck submitted. The court below gave credence to plausible allegations—and properly ignored the implausible. There is nothing under this Court's statements of the law in *Arruda* and *Zastrow,* the breach-plus dichotomy, or the authorities cited by Munck (as corrected), that transforms this garden-variety lease dispute into a federal RICO claim—Munck's characterizations notwithstanding.

## 2. Munck Pled no Factual Basis for its Conclusory Allegations of Intent to Give Rise to a Strong Inference of Fraud [Responsive to BOAII.A.2.]

Munck's scienter allegations were required to meet the heightened pleading requirements of Rule 9(b). *Marriott Bros. v. Gage*, 704 F. Supp. 731, 740 (N.D. Tex. 1988), aff'd 911 F.2d 1105 (5th Cir. 1990). While intent can be averred generally, a RICO mail fraud averment must nevertheless provide some "factual basis for conclusory allegations of intent," which must, in turn, give rise to a "strong inference of fraudulent intent." *Id. see also United States v. Strother*, No. 21-40592, 2023 U.S. App. LEXIS 29842, at *13 (5th Cir. 2023) (requiring specific intent for mail fraud); *United States v. Reed*, 908 F.3d 102, 124 (5th Cir. 2018) (same for wire fraud). They did not.

Munck contends the "intent to defraud" standard or the "reckless indifference to the truth or falsity of their representations" standard were adequate to plead the requisite intent for a RICO claim citing *Landry*. These are arguments Munck makes for the first time on appeal which have been waived. *Arruda*, 861 F. App'x at 836. Either way, whether looking at specific intent, intent to defraud or even reckless indifference, Munck has not plead the requisite intent necessary as to the specific OPEX at issue in this case.

***First,*** the audit reports, which control over Munck's grandiose pleading declarations, show there is no fraud, no misrepresentation, no concealment, and at

best, only one possible miscategorized charge amounting to a total of $16,253.74. The rest, as reflected in Munck's Audit Reports, are simply matters of contract interpretation disputes. Munck does not allege any factual basis for its conclusory allegations of intent with respect to the $16,253.74 charge, or indeed with respect to any other specific OPEX charge under Rule 9 as is required. Instead, Munck's allegations are unsupported pronouncements about intent (again without any factual basis) regarding an elaborate scheme of RICO fraud in connection with real estate investments elsewhere—which do not support a plausible allegation of specific intent either.

In this regard, Munck's reliance upon the pre-*Iqbal* case of *Crowe v. Henry*, 43 F.3d 198, 201 (5th Cir. 1995) is unavailing. That case involved "exceedingly complicated facts between Crowe and his long-time lawyer, Henry, involving commingling of properties, concealment, and conversion. Based upon the unique facts this Court found circumstantial evidence to find Henry had the requisite fraudulent intent sufficient to permit a reasonable trier of fact to find Henry violated RICO. However, *Crowe* does not support Munck's contention all it has to do is make conclusory allegations without reference to any plausible facts. Indeed, *Iqbal* holds otherwise. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009) ("…a court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

Moreover, both *United States v. Curry*, 681 F.2d 406 (5th Cir. 1982) and *Cadle Co. v. Schultz*, 779 F.Supp. 392 (N.D. Tex. 1991), which Munck also rely on, were decided long before the United States Supreme Court limited fraudulent deprivations of the "intangible right of honest services" under Section 1346 to reach bribery and kickback schemes—neither of which are at issue here. *See Skilling v. United States*, 561 U.S. 358, 368, 130 S. Ct. 2896, 2907 (2010). Indeed, the Supreme Court recently addressed the history of "intangible honest services" wire fraud, as well as a discussion of Skilling, but in any event made clear "[T] he intangible right of honest services" codified in §1346 plainly does not extend a duty to the public to all private persons..." *Percoco v. United States*, 598 U.S. 319, 143 S. Ct. 1130, 1138 (2023), and Munck failed to allege any tie sufficient to allow such application.

Munck's reference to *Tellabs* and *Lormand* at BOA.34 are likewise unhelpful. As previously explained, they are securities fraud cases with a statutory scienter standard under PSLRA the Court in *Tellabs* found must be viewed holistically.

Likewise, Munck's eight arguments that the District Court misapplied Rule 9(b) are erroneous.

***Second***, the Court below did not conclude affirmative misrepresentations are required as a predicate for federal RICO claims, nor did it hold the OPEX statements

submitted by Sooner and Landlord were not affirmative representations. Instead, it determined Munck's allegations about false or fraudulent charges and services were effectively a breach of contract claim, not a cognizable RICO claim. *See* ROA.2173. The District Court found there was no concealment that could be fraudulent—indeed, it correctly found all Munck's complaints regarding OPEX expenses, management fees, and alleged overcharging stem from OPEX reports Defendants provided, and although Munck complained of the inclusion of certain expenses or calculation of certain charges, it did so based upon access to and review of the underlying supporting documentation as part of the audit. There are no allegations of altered figures, the creation of fictitious invoices, or the failure to disclose key information in such a way as would transform Munck's contractual disputes under the Lease into a federal RICO claim. ROA.2172-2173. In short, Munck spends two pages arguing about a holding the District Court never made.

Further, the District Court did not rely on *Landry* for the point a RICO scheme does not require affirmative misrepresentations as Munck makes it seem at BOA.35,fn.17. Instead, Judge Lynn cited *Landry* as a secondary source the requirements of mail and wire fraud claims require. ROA.2167.

Moreover, *McLendon v. Cont'l Grp., Inc.,* 602 F. Supp. 1492 (D.N.J. 1985) is not the law in this Circuit. *See Chris Albritton Constr. Co. v. Pitney Bowes Inc.,* 304 F.3d 527, 532 (5th Cir. 2002) ("Plaintiffs contend that even if we dismiss their

common-law fraud claim, the RICO claim should stand, because the fraud required as a predicate act for RICO does not require a misrepresentation of fact. This contention is without merit. Both mail fraud and wire fraud require a scheme or artifice to defraud which includes false or fraudulent pretenses, representations or promises, requiring proof of intent to defraud.").

Munck's litany of opinions cited for the premise no affirmative misrepresentation is needed to support a RICO claim—when reviewed all establish if not an affirmative misrepresentation, some other type of fraud is needed. *See Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264, 1282-83 (10th Cir. 2023);[11] *United States v. Doherty*, 969 F.2d 425, 429 (7th Cir. 1992)(bank fraud addressing check kiting); *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1359 (11th Cir. 2004) (nondisclosure of material information can constitute a violation where defendant has a duty to disclose); *United States v. Rafsky*, 803 F.2d 105, 108 (3d Cir. 1986); *United States v. Riebold*, 135 F.3d 1226, 1229 (8th Cir. 1998) (concealment); *United States v. Hoffman,* 901 F.3d 523, 546 (5th Cir. 2018)(fake and fabricated invoices including withdrawals and deposits of the same funds); *Blachly v. United States*, 380 F.2d 665, 673-74 (5th Cir. 1967) (deceitful concealment of material facts may also constitute actual fraud); *United States v. Adkins*, 741 F.2d 744, 750 (5th Cir.

---

[11] Notably, *Clinton* is directly contrary to Fifth Circuit law in its holding "a misleading omission" also may establish intent to defraud under RICO even in the absence of a duty to disclose. *See Arruda,* 861 F. App'x at 834.

1984) (false certifications from phony vendors); *Gewecke v. US Bank N.A.*, <u>2011 WL 13136267</u> (D. Minn. June 6, 2011) (filing false assignments, affidavits or other documents leading to illegal foreclosures).

Judge Lynn did not require Munck to plead unrequired elements—just to plead a plausible RICO fraud. It did not. It plead a breach of contract.

**Third**, Munck did not argue below "intent for RICO mail/wire fraud may be found when a defendant violates an agreement maliciously and soon after it is made such that 'his desire to do so before he entered into the agreement is evident" and this point is waived. *See Arruda*, <u>861 F. App'x at 836</u>

On the merits, Munck's restated "affirmative misrepresentations or false statements" requirement argument is a fallacy when the opinion of the District Court is read and considered.

**Fourth**, the District Court concluded Munck's allegations of nondisclosure of an intent not to perform a contract generally could not support the requisite intent under the mail/wire fraud statutes because Munck **did not provide any non-conclusory allegations that support an inference of fraudulent intent**. The District Court was right. She gave this example, "¶167(l) of the FAC describes a mid-year update email sent from Florsheim to Plaintiff which Plaintiff characterizes as "false in that it promised upcoming improvements to the Banner Place that Defendants did not intend to complete," but provides no facts from which that intent not to complete

improvements could be inferred." ROA.2176. Munck has offered nothing to refute it. Munck further offers no counter to the District Court's finding and conclusion that Appellees "disclosed the allegedly "false" charges and bases for calculating OPEX to Plaintiff—thereby informing Plaintiff directly of the alleged "fraudulent" activity or that it undermines any inference of fraudulent intent…."ROA.2177.

**Fifth**, the Audit Reports establish this is a Lease dispute, not RICO fraud. They do not show any misrepresentation, fraud, or concealment. ROA.945-957, ROA.967-979. Munck's receipt of necessary information to conduct the audits establish lack of concealment. The audit reports and Lease defeat the implausible allegations of RICO fraud and any specific intent to defraud. And Munck cites not one case on point to the contrary.

**Sixth,** regarding the alleged participation of LBLIC, Munck's FAC and its Brief do not identify any fact connecting LBLIC or Phillips Banner Place's operation prior to Summer 2020. Not surprisingly, Munck makes no factual allegations showing LBLIC or Phillips were aware of or involved in Banner Place's operation during 2017-2019, the Landlord's expenses in operating Banner Place or accounting for such expenses. Moreover, there is no allegation LBLIC or Phillips had any involvement, connection, or knowledge of the 4 alleged fraudulent charges referenced by Munck in its Brief at BOA.12.

Additionally, to state a claim for a RICO violation, Munck must allege each defendant committed two predicate acts of requisite racketeering activity, and a pattern of such acts. *See Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993); *Gonzalez v. Bank of Am.*, 2011 U.S. Dist. LEXIS 16963, at *13-14 (S.D. Tex. 2011); *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008) (The requirements of Section 1962(c) must be established **as to each individual defendan**t). Indeed, "[t]he focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise." *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987), cert. denied, 486 U.S. 1022 (1988); *United States v. Torres Lopez*, 851 F.2d 520, 525 (1st Cir. 1988) (same). Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails. *Craig Outdoor Advert., Inc.*, 528 F.3d at 1027. Munck failed.

*Seventh*. As discussed above, the so-called "collusive nature of the overarching scheme" is a sham. And the conclusory allegations made by Munck, stripped down, describe nothing other than legitimate commercial real estate mortgage lending and secured purchase transactions, happening everyday across America.[12]

---

[12]Further, *Crowe* which does not apply here, has been previously explicated.

*Eighth.*   The conviction of Jordan and his wife for unrelated acts, pertaining to an unrelated property, have nothing to do with Phillips, LBLIC or the other Appellees on this Brief.  And Munck has not provided even a single authority that supports its contention a business decision by a lender to continue to finance on a secured mortgage after a borrower has been convicted constitutes evidence the lender or its principal has the specific intent for purposes of RICO mail/wire fraud to defraud anyone.   In fact, none of the cases cited by Munck have any bearing on whether intent can be inferred with respect to anyone other than a defendant who has been convicted of a similar crime.   And Appellees represented by the undersigned counsel can be assigned no such inference.  In any event, breach of contract is not fraud—so Munck's point, is not well-taken.

*Ninth*.   This is a breach of contract case.  There is no fraud.  Munck cites pages 10 and 13-15 of its Brief as support the District Court failed to properly weigh allegations of fraud or deceptive behavior outside of the parties' relationships as providing additional circumstances supporting the inference of scienter.  It provides no such support.  There is no allegation regarding Hall, Florsheim, and JP-Banner, LP anywhere in those cites.  Phillips and  LBLIC are only mentioned on page 15— and those references have nothing to do with the Banner Lease, OPEX or the Banner Property.

*McCrae Assocs., LLC v. Universal Cap. Mgmt., Inc.*, 554 F.Supp.2d 249, 256 (D. Conn. 2008) involved common law fraud and allegations of self-dealing—not breach of contract dressed in civil RICO garb. In *Pro-Com Prod., Inc. v. Kings Express LA, Inc.*, 2019 WL 1771652, at *3 (C.D. Cal. Feb. 21, 2019), Plaintiff alleged Defendants fraudulently induced Plaintiff to contract by misrepresenting their insurance status. Plaintiff's statements Defendants "*knew from previous issues with their insurer that they were not covered*" and Defendants carried out similar conduct "against dozens of other entities" was enough for the Court to infer the existence of an intent to defraud. *Id.* (Italics added). *Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 379 (6th Cir. 1997) is grossly miscited. It goes to admissibility of evidence under Rule 404(b)—and did not admit evidence for purposes of fraudulent intent. *United States v. Ahaiwe*, 2023 WL 4196954, at *3 (2d Cir. June 27, 2023),[13] *United States v. Graham*, 51 F.4th 67, 82 (2d Cir. 2022);[14] and *United States v. DiRosa*, 761 F.3d 144, 153 (1st Cir. 2014) are distinguishable and all involve similar recurrences frauds and fraudulent schemes not present here.[15]

---

[13] This is not a RICO case. The question here was whether there was error in admitting evidence regarding Defendant's history of identity theft and money laundering in this conspiracy to commit money laundering, bank fraud, and aggravated money laundering case.

[14] EFT scheme was done at the same time as the charged conspiracy, with the same coconspirators, and with the same hallmarks—"unconventional" financial techniques used to purportedly discharge debt.

[15] DiRosa made knowingly false promises Kiselak's and Mesite's investments would be repaid promptly, and they would be profitable.

### 3. Munck did not allege RICO claims with requisite particularity. [Responsive to BOAII.A.3]

*First*, because as discussed, Munck's asserted claims are breach of contract claims merely masquerading in RICO garb; Munck has not asserted a claim for mail/ wire fraud. *See United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir.1980) ("[T]he [mail fraud] statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract."). So Munck could not have fulfilled its obligations under Rule 9(b) to plead its mail/wire fraud claims with particularity—because it has no such claims.

*Second*, as detailed in Section I.A. above, because Munck's RICO claims allege wire/mail fraud as the predicate acts, in addition to meeting *Twombly* and *Iqbal* requirements, Munck's pleadings are subject to heightened pleading standards of Fed. R. Civ. P. 9(b), requiring Munck to "state with particularity the circumstances constituting fraud." *Arruda*, 861 F. App'x at 834.

Here, Munck's pleadings often refer to "Defendants" or "the individual Defendants" collectively when making statements regarding knowledge and intent, such each Defendant's alleged individual contribution to the fraud is generalized and unspecific and does not support a strong inference of fraudulent intent for any of these Appellees. And Munck's pleadings impermissibly rely on generalized allegations of connections between various Defendants as shorthand for alleging each Defendants' participation in the purported scheme. As the District Court

correctly found, "[S]uch lack of detail as to each Defendant renders Plaintiff's claims against these Defendants implausible and deficient under Rule 9(b)" (*citing Com. Metals Co. v. Chazanow*, 2009 U.S. Dist. LEXIS 107676, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 17, 2009). ROA.2175

Munck contends it sufficiently pled predicate "who, what, when, and where as to the pleaded predicates of mail and wire fraud" relying on *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.,* 900 F.3d 640, 647 (5th Cir. 2018). *IAS* is not a RICO mail/wire fraud case. It involves claims for fraud, fraudulent inducement, fraud by nondisclosure, and breach of contract. *Id*. at 646. However, that case did not address conclusory, implausible claims of the nature of those raised here, nor did it address a circumstance in which Plaintiff failed allege facts specifying each Appellee's alleged individual contribution to the fraud, as here.

Munck also cites *Afshani v. Spirit SPE Portfolio 2006-1, L.L.C.,* 2022 WL 964201, at *3-4 (5th Cir. Mar. 30, 2022) (reversing dismissal of fraud claims) in support of its contention it sufficiently pled its RICO wire/mail fraud claims under Rule 9(b). Again, *Afshani* is not a RICO wire/mail fraud case (it involves fraudulent concealment) and Munck offers no analysis of the case whatsoever.

***Third***. A RICO plaintiff must also plausibly allege the RICO violation proximately caused Munck's injuries. *Molina-Aranda v. Black Magic Enters., L.L.C.,* 983 F.3d 779, 783-84 (5th Cir. 2020) (*citing Holmes v. Secs. Inv. Prot. Corp.,*

503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992). The proximate causation standard is not one of foreseeability; instead, Munck must demonstrate the alleged violation "led directly" to the injuries. *Id*. (*citing Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006). Here, Munck alleges no facts showing how the acts of each particular Defendant were the proximate cause of any injury to Munck, much less what that injury was or, if financial, how much it allegedly suffered due to each particular Defendant's actions.

*Fourth*.   For claims alleging fraud, scienter allegations must meet the heightened pleading requirements of Rule 9(b). *Marriott Bros.,* 704 F. Supp. at 740. Thus, while "intent can be averred generally . . . a RICO mail fraud averment must nonetheless provide some 'factual basis for conclusory allegations of intent,' which must, in turn, give rise to a 'strong inference' of fraudulent intent." *Id*.; *see also Ranieri,* 336 F. Supp. 3d at 716.   However, Munck failed to plausibly allege, with respect to each Appellee, any factual basis giving rise to a strong inference of fraudulent intent to satisfy Rule 9(b).

Munck failed to allege any plausible facts giving rise to a "strong inference" of intent to commit the alleged fraud or to induce Munck to pay for inflated OPEX charges reflecting services and expenses Sooner did not perform or intend to perform regarding each Appellee. *Id.* For example, the predicate acts recount communications by Florsheim and Hall—at the direction of Sooner, which are all

consistent with a legitimate, non-criminal landlord/tenant relationship, such as providing financial statements and reports, or responding to tenant inquiries. ROA.2176. Thus, the facts alleged in support of the predicate acts do not provide a reasonable basis from which fraudulent intent can be inferred. *Id.* Indeed, Munck does not provide any non-conclusory allegations supporting an inference of fraudulent intent against any of Appellees.

**Fifth.** The allegations made in this lawsuit of wire fraud and mail fraud are not particular as to each Defendant, they do not allege facts to show each Defendant's specific contribution to the alleged fraud, they are conclusory and implausible, they do not provide any "factual basis for conclusory allegations of intent," which give rise to a strong inference of fraudulent intent as to each Defendant, and they are wholly insufficient under Rule 9(b) as to each Defendant.

Munck failed to plausibly allege facts specifying each Appellee's particular contribution to the alleged mail or wire fraud. And, in this respect, plausibility includes giving exhibits to Munck's pleadings, that conflict with its conclusory, unsupported allegations, controlling effect. *See* Section I.C. above.

Munck refers this Court to *United States v. Warren*, 986 F.3d 557, 563 (5th Cir. 2021). The question in *Warren* was whether there was a violation of 18 U.S.C. §2—the federal aiding and abetting statute. That statute is not at issue here. Even if it were, there are no facts pled to support Munck's lulling theory. Indeed, all the

facts show the information Munck requested was disclosed for its auditors use—not concealed.

*Sixth*.  Munck's "*Second*" point, discusses a "detailed chart of the alleged predicate communications" citing ROA.1894-96.  But these documents do not connect each Appellee to the fraudulent scheme—foremost because there is no fraudulent scheme—just a garden-variety lease dispute.  None of the cases cited by Munck on BOA.49 stand for the proposition there is RICO mail or wire fraud when the dispute is just about breach.

Nor do Munck's general, conclusory, and unsupported allegations—which are contrary to the documents attached to its pleadings—connect each Appellee particularly to any "fraudulent scheme."  Munck cites pages 4-10 of its Brief as support for proof its allegations of connection meet the criteria of Rule 9.  They provide no such evidence.

Moreover, Munck's conclusory allegation of a "knowing participation in the scheme" provides no factual nexis to its allegations in this regard. Compare for example Munck's conclusory allegations in FAC¶¶116, 121d, 162 (lumping Defendants and including time periods Phillips and LBLIC are not even alleged to have been associated with the Banner Property), and 187 with the specific allegations in *United Healthcare Services v. Next Health, LLC*, 2021 U.S. Dist. LEXIS 36084 at \*18-19 (cited by Munck below and at BOA.50).

With respect to Phillips and LBLIC, the only paragraphs in Munck's FAC that specifically mention Phillips are FAC ¶¶ 2, 4, 15-17, 35-36, 115-119, 121d, n, y, z, aa, bb, 122, 125, 131-132, 194-195 197 and footnotes 6-7, and 26,[16] and only FAC ¶¶ 2, 15-16, 35-36, 115-118, 121c, n, 125, 131-132, 137-139, 159- 161, and footnote 26 specifically mention LBLIC.[17] None set forth specific facts or plead with particularity either Phillips's or LBLIC's alleged predicate RICO violations, including who, what, when and how, of either of their alleged frauds as required by Rule 9(b). Nor do they explain how any of their purported statements (of which none are alleged) are fraudulent, or specifically identify how or when either Phillips or LBLIC fraudulently used the mail/wires in any predicate RICO act. And while mail/wire fraud is a predicate RICO act, Munck has not brought fraud or fraudulent inducement claims against Phillips or LBLIC. Further, Munck alleges no facts showing the acts of Phillips or LBLIC were the proximate cause of any injury to Munck, much less what that injury was or, if financial, how much it allegedly suffered due to Phillips's or LBLIC's actions. Nor do any of the statements lumped in the FAC or RICO Case Statement regarding "Defendants" or the so-called "Sooner Enterprise." And Plaintiffs' conclusory and lumped accusations are insufficient to fill the numerous pleading deficiencies in the FAC.

---

[16] ROA.771, 774-775, 779, 797-800, 803, 808-811, 813, 815, 834-835.
[17] ROA.771, 774, 779, 797-799, 803, 808, 811,813, 815-816, 821-822, 835.

Further, while the FAC describes Phillips—LBLIC's CEO and an alleged ringleader of the Sooner Enterprise—as Jordan's "lifelong friend," ROA.774,1881 it states no allegations from which one could plausibly infer Phillips had any knowledge of the fraud or intent to contribute to it, let alone act as leader of the scheme. Such lack of detail renders Munck's claims against Phillips and LBLIC implausible and deficient under Rule 9(b).

Munck ends by citing *SKS Constructors, Inc. v. Drinkwine*, 458 F.Supp.2d 68, 80 (E.D.N.Y. 2006); *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (plaintiff need not show each defendant was involved in every alleged act of racketeering); and, yet again, *United Healthcare*, 2021 WL 764035, at *10. *SKS* addresses closed-ended continuity—not pleading, and even there the allegation have to be of essentially the same scheme. *Id*. *Odom* also addresses continuity—not pleading where the "allegations of plaintiffs Odom and Moureaux-Maloney describe similar methods of fraudulently charging Best Buy customers for MSN Internet accounts. Plaintiffs' allegations cover almost two years of conduct by Best Buy and Microsoft." *Id*. at 552-553. The best way for the Court to see the allegations in *United Healthcare*, which are easily distinguishable, is to review the highlighted pleadings provided to the District Court (not by Munck) at ROA.1545-1730.

### 4. Munck did not sufficiently allege a RICO pattern. [Responsive to BOAII.B.]

A pattern of racketeering activity "consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007). Courts refer to this as the "relationship prong" and the "continuity prong." *See id.*

To meet the pattern requirement, Munck must satisfy "the so-called "continuity plus relationship" test: the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)." *H.J., Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed. 2d 195 (1989). Section 1961(1)(B) defines 'racketeering activity' according to whether it constitutes 'any act which is indictable' under specified sections of title 18 of the United States Code, [two] of which [are] mail fraud [and wire fraud]." *TrueGreen Landcare, LLC v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted).

To establish a pattern of racketeering activity, Munck must allege (1) the predicate acts of racketeering activity, and (2) a pattern of such acts. *Burzynski*, 989 F.2d at 742. A pattern of racketeering activity includes two or more acts of racketeering activity. 18 U.S.C. § 1961(5). "[A] 'pattern' requires both that the acts are 'related' to each other and that they have 'continuity.'" *Burzynski*, 989 F.2d at 742. "It is this factor of continuity plus relationship which combines to

produce a pattern." *H.J. Inc.,* 492 U.S. at 239 (citations omitted). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. Continuity requires the related acts "constitute or threaten long-term criminal activity." *Burzynski,* 989 F.2d at 742. Continuity can be proved by "a closed period of repeated conduct, or …past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.,* 492 U.S. at 241. "A closed period of conduct may be demonstrated "by proving a series of related predicates extending over a substantial period of time'" while "[a]n open period of conduct involves the establishment of 'a threat of continued racketeering activity.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,* 90 F.3d 118, 122 (5th Cir. 1996) (citing *H.J., Inc.,* 492 U.S. at 242).

"Where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Word of Faith,* 90 F.3d at 123. And when that is the case, "*Burzynski, Calcasieu,* and *Delta Truck* make clear that "[i]t is unnecessary to delve into the arcane concepts of closed-end or open-ended continuity under RICO." *Id.* at 123.

The only communications Munck alleges as predicates pertain to Lease OPEX charges which are all part of the same transaction. Munck has not alleged any fraud outside of charges alleged in the OPEX reports or apart from its Lease. This case,

most charitably viewed, involves allegations which relate to or arise out of OPEX reports for 2017, 2018 delivered together in early 2019 and a separate OPEX report for 2019 delivered in 2020. This conduct at best relates to a single alleged victim, a single alleged plan or scheme, and at most, three discrete acts. Put simply, the alleged "predicate acts" are all part of the same single transaction and involve the same purported "victim."  Munck has not alleged any act of fraud or predicate act directed at Munck outside "fraud" alleged in the OPEX reports.  And while Munck identifies a few other single purpose entities in the FAC, it does not plausibly allege any have committed wire/mail fraud as predicate acts under RICO or any other type of fraud that would satisfy the Rule 9(b) requirements.  Since the predicate acts all involve one purported "victim" (Munck) and Appellees, and are not part of a larger scheme, continuity cannot be established by multiple acts of fraud that are part of a single transaction." *Word of Faith,* 90 F.3d at 123.

If the Court believes it necessary to delve into continuity or relatedness (it need not) schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of closed or open pattern continuity. *Nerium Skincare, Inc. v. Nerium Int'l, LLC,* 2018 U.S. Dist. LEXIS 194527, at *30 (N.D. Tex. 2018)(citation omitted).  Continuity cannot be established by multiple acts of fraud that are part of a single transaction. *Clapper v. Am. Realty Investors*, 2016 WL 302313 (N.D. Tex. January 25, 2016).  *Nerium*

*Skincare, supra* at \*1; *D&T Partners v. Baymark Partners, LP,* 2022 U.S. Dist. LEXIS 83140 (N.D. Tex. 2022).

Munck does not assert the pattern of conduct was discontinued on or after the submission of a basic operating costs statement for 2019. Specifically, Munck notes it has not received such statements for 2020 or 2021. Moreover, Munck has noted and relied upon the recent conviction and sentencing of two Appellees and, in particular, Jordan. Obviously, under the pleadings there is no likelihood any of the conduct alleged with respect to calendar years 2017, 2018, or 2019 has or will continue in the future. Accordingly, Munck has not alleged open-ended continuity as basis for a claim of a pattern of RICO activity.

Munck's allegations of purported racketeering activity do not meet the relatedness test either. *See id.* There the court noted closed periods of continuity require a "series of related predicates extending over a substantial period of time" citing *HJ, Inc.*, 492 U.S. at 242, which acts are commonly referred to as "repeated conduct," *citing United States v. Thompson*, 253 F.3d 700 (5th Cir. 2000). And in that case, the court noted there were 18 alleged predicate acts occurring over 18 months. While noting that two years had been determined to be sufficient for pleading a substantial time, *see Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007), the focus of the "repeated conduct" requirement was impacted in that it involved only one scheme with a singular objective, and a closed group of targeted victims.

*See Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 29 (1st Dist. 2000).

Notably, while Munck tries to allege a "vast array" of victims and injuries, Munck is the only identifiable alleged victim, because the unspecified assertions about other potential victims who may have suffered other potential injuries are inadequate, *see SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 942 (7th Cir. 1988), and *Nerium, supra*.

To attempt to avoid this, Munck suggests the calculations utilized by its landlord in connection with the unique provisions of its Lease, are like those other tenants have or those at other properties. However, there is no specific reference or allegation in Munck's FAC the calculations or analysis underpinning the OPEX arguments effected or applied to other third parties or injured other tenants in Banner Place, much less any other tenant of any other building in which Jordan has ever had an interest. In short, the conclusory allegations Munck makes are insufficient to plausibly plead relatedness or continuity.

Next, *Arruda*, 861 F. App'x at 836 (5th Cir. 2021), Munck waived the following arguments by not raising them below:

- Repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern of racketeering activity for purposes of civil RICO (BOA.53);

- Racketeering pattern is not precluded because there is a single victim (BOA.52-54)[18]

---

[18] Munck attempts to smuggle concepts it has not previously argued in through misleading

- One scheme extending over a substantial period of time, or showing signs of extending indefinitely into the future, can establish a pattern. (BOA.54).

- A single scheme can constitute a pattern of activity or the conduct alleged is a single transaction. (BOA.54).[19]

- To establish a pattern of racketeering, plaintiff need not demonstrate multiple schemes" but rather can show continuity through the nature of an enterprise or the sheer number of predicate acts over several years (BOA.54).

- Continuity may be shown by other than proof of multiple schemes (BOA.54).

(ROA.1433-1438, 1784-1786 and 1827-1830).

Further, the District Court properly rejected Munck's allegations (Munck refers to BOA.13-15) as insufficient to support continuity because they are conclusory and implausible, and the exhibits Munck attached to its pleadings, are contrary to those allegations, and show there is no "larger scheme" much less any fraud.

Munck's claim the District Court ignored its allegations of similar predicate acts itself ignores the language of the opinion. The Court found no other similar predicate acts of fraud were alleged against others in other buildings with similar claims of inflated OPEX charges would satisfy Rule 9(b) pleading requirements.

---

parentheticals. *Larco Towing* at BOA.52, *Abraham* (cited for other points below, but waived regarding single illegal transaction, at BOA.53, all cases on BOA.54 (including some argued for other points) include waived arguments Munck is attempting to assert for the first time on appeal.
[19] *See* ROA.1437 where Munck argued "this is not simply a single transaction."

The District Court's opinion does not tax pleading requirements concerning continuity allegations pertaining to fraud. Fraud is always subject to Rule 9(b) heighted pleading requirements. So are RICO claims resting on wire/mail fraud. *Williams,* 112 F.3d at 177. *Abraham* is not contrary. It concerned a determination about whether allegations of a racketeering pattern were sufficiently like what was contemplated in *H.J.* 480 F.3d at 356. *Bridgewater* addressed the same concept— not Rule 9(b). *Bridgewater v. Double Diamond-Delaware, Inc.*, 2010 U.S. Dist. LEXIS 45790, at *31 (N.D. Tex. 2010).

*Wave Length Hair Salons of Fla., Inc. v. CBL & Assocs. Properties, Inc.*, 2017 WL 10604140, at *7 (M.D. Fla. Apr. 11, 2017) involved class allegations against a shopping mall owner with nationwide locations that used a standard lease agreement with all itstenants, and Plaintiff alleged the same fraud and fraudulent misrepresentations were made to all tenants nationwide for years. *See* Pacer.gov; U.S.D.C. M.D. Fla.; Case No. 2:16-cv-00206 [Doc. 32]. It's not this case.

Munck asks this Court to rely on pleadings from previously dismissed civil cases--none resulting in judgments to support its allegations. Thus, *Terrell v. Childers*, 1993 WL 433687 (N.D. Ill. Oct. 21, 1993) is distinguishable.

Whether the test for relatedness is broad or not, Munck's allegations regarding other litigations are not related to the OPEX allegations it makes in this lawsuit.

There is no pattern of racketeering by Appellees in this case.

## III.  MUNCK'S RICO CONSPIRACY CLAIM WAS PROPERLY DISMISSED [RESPONSIVE TO BOA III]

Munck contends Appellees conspired to violate 18 U.S.C. §1962(d) which makes it unlawful for "any person to conspire to violate any of the provisions of subsections (a), (b), or (c)" of §1962.  "Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp*., 4 F.3d 1153, 1191 (3rd Cir. 1993).  Because Munck's §1962(c) claim fails, its §1962(d) claim also fails.  *Id.*

Moreover, to support a RICO conspiracy claim, Munck must plausibly plead: (1) two or more people agreed to commit a substantive RICO offense; and (2) [the defendants] knew of and agreed to the overall objective of the RICO offense. *See North Cypress Medical Center Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015)

The complaint "should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." *FD Prop. Holding, Inc. v. US Traffic Corp*., 206 F.Supp. 2d 362, 373 (E.D.N.Y. 2002).  The FAC merely alleges:

> 190.  Defendants were in constant contact regarding the above-described pattern of racketeering and agreed to facilitate the operation of the Sooner Enterprise through the above-described pattern of racketeering and for the purpose of defrauding Plaintiff and others as explained in Paragraphs 1 through 24 and 115 through 121.  Among

other things, Sooner and its principals facilitated the above-described pattern of racketeering by orchestrating the delivery of fraudulent invoices, OPEX Reports, and other communications designed to obtain payment from Plaintiff of excess and fraudulent expenses and to cover-up the fraudulent scheme as described in Paragraphs 140-171.

191. Defendants agreed that Sooner and Jordan would commit at least two of the above-described predicate acts.

(ROA.834).

These conclusory allegations fail to set forth with specificity what the agreement by LBLIC, Phillips (or anyone else) was, when the agreement by Phillips (or anyone else) commenced, and what acts by LBLIC, Phillips (or anyone else) were taken in furtherance of it. Here, it is undisputed LBLIC and Phillips were strangers to Plaintiff and Banner Place until Summer 2020. It is also undisputed LBLIC is allegedly connected to a single predicate act which did not constitute wire or mail fraud. There is no allegation LBLIC or Phillips knew of, participated in, or agreed to any of the allegedly fraudulent OPEX charges. The District Court correctly determined there was no RICO conspiracy.

## A. THE DISTRICT COURT DID NOT ERR IN DENYING MUNCK FURTHER LEAVE TO AMEND

As reflected from the procedural history, Munck filed OrigC and then in the face of Motions to Dismiss filed its FAC. Additional Motions to Dismiss followed and Munck filed briefs in response. Thereafter, Munck was requested to, and did, file a detailed RICO Case Statement. The Case Statement and Appendix attached

encompassed hundreds of pages of supplemental material. The District Court also heard Munck after the RICO Case Statement was filed in a hearing that lasted almost 2 hours. Noting Munck had already amended, the District Court concluded repleading would be futile because despite the detailed allegations made by Munck, repleading would not provide any additional specificity to overcome the fundamental deficiencies in Munck's RICO claim. ROA.2182.

In *Price v. Pinnacle Brands, Inc.,* 138 F.3d 602 (5th Cir. 1998) upheld a denial of leave to amend a RICO claim where plaintiff in case was represented by able counsel[20] who, filed a complaint, a RICO case statement, and responses to motions to dismiss. Under that formulation, in this case, Munck has had four opportunities.

While the District Court focused primarily on futility, the court's order and its determination given this history, demonstrates it was not motivated solely by futility and therefore the abuse of discretion standard is not appropriate. However, even if this Court were to apply the *de novo* standard the District Court's determination should be upheld.

---

[20]Here, Munck, able lawyers representing themselves, had three opportunities to articulate its RICO theories.

## IV.  CONCLUSION

For the foregoing reasons, the District Court's Judgment against Munck dismissing the claims against Appellees Scot Florsheim, JP Banner, LP, Hall, LBLIC and Phillips should be affirmed.

> Respectfully submitted,
>
> By: */s/ Mitchell Madden*
> Mitchell Madden
> State Bar No. 12789350
> Email: Mmadden@hjmmlegal.com
> skinney@hjmmlegal.com
> Dennis M. Holmgren
> State Bar No. 24036799
> Email: dennis@hjmmlegal.com
> Holmgren Johnson:
> Mitchell Madden, LLP
> 12801 North Central Expressway, Suite 140
> Dallas, Texas 75243
> Telephone:  972-484-7780
> Facsimile:  972-484-7743
>
> Attorneys for Appellees Scot Florsheim, JP-Banner, L.P., Louann Hall, Liberty Bankers Life Insurance Company, and Bradford A. Phillips

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, the foregoing document was served via electronic filing to all registered counsel of record.

> */s/ Mitchell Madden*
> Mitchell Madden

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this Brief for Appellees complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i), excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 12,920 words according to the word count provided by Microsoft Word word-processing software. The document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 because it uses a proportionally spaced Times New Roman typeface with 14-point font and 12-point font footnotes.

*/s/ Mitchell Madden*
Mitchell Madden