# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

*Munck Wilson Mandala, L.L.P.,*

*Plaintiff – Appellant*

*v.*

*Mark D. Jordan; Scot Florsheim; Louann Hall; Laura Maczka-Jordan; JP-Banner, L.P.; JP-Banner GP, L.L.C.; Sooner National Property Management, L.P.; JP Realty Partners, Limited; Banner Investors, L.L.C.; Bradford A. Phillips; Liberty Bankers Life Insurance Company; Does 1 Through 50,*

*Defendants–Appellees*

**On Appeal from**
United States District Court for the Northern District of Texas
3:22-CV-1657

## REPLY BRIEF FOR APPELLANT

**MUNCK WILSON MANDALA, LLP**
Robert E. Linkin
Texas State Bar No. 0075773
rlinkin@munckwilson.com
807 Las Cima Pkwy, Suite 300
Austin, TX 78746
Telephone: (310) 201-1600
Fax: (737) 201-1601

*Attorneys for Appellant Munck Wilson Mandala, L.L.P*

*Additional counsel listed on next page*

Shain A. Khoshbin
Texas State Bar No. 11375975
skhoshbin@munckwilson.com
12770 Coit Road, Suite 600
Dallas, TX 75251
Telephone: (972) 628-3600
Fax: (972) 628-3616

Marina V. Bogorad
California State Bar No. 217524
mbogorad@munckwilson.com
1925 Century Park. E., Suite 2300
Los Angeles, CA 90067
Telephone: (310) 855-3311
Fax: (972) 628-3616

# TABLE OF CONTENTS

ARGUMENT.................................................................................................. 2

I.   APPELLEES SHOW NO VALID GROUNDS TO AFFIRM THE
     IMPROPER DISMISSAL OF THE RICO CLAIMS. ................................ 2

     A.   Appellees' Waiver Arguments are Wrong.......................................... 2

     B.   Appellees' Arguments Further Confirm that Appellant
          Sufficiently Alleged Racketeering Activity........................................ 4

          1.   Appellees Ignore Allegations and Authorities Confirming
               that Appellant Sufficiently Pled a Fraudulent Scheme. ........... 6

               (a)   Appellees' Fictitious Charges are "Classic Mail
                     Fraud."................................................................................ 7

               (b)   Appellees' Malicious Breach Shows Intent to Never
                     Perform. .............................................................................10

               (c)   Appellees Concealed Facts. ..............................................11

                     (i)    Appellees, Like the District Court, Ignore
                            Concealment Allegations. ....................................11

                     (ii)   Lease and Audits Further Support
                            Concealment. ........................................................13

          2.   The Totality of the Allegations Plausibly Infers
               Fraudulent Intent......................................................................17

          3.   Appellees Ignore Particularized Facts Establishing
               Fraudulent Circumstances, Including Each Appellees'
               Participation...............................................................................27

               (a)   Appellees Ignore Specific Facts Alleged to Show
                     "Who, What, When and Where". ......................................27

               (b)   Appellant Plausibly Alleged Proximate Cause. .............31

     C.   Appellees Misinterpret Applicable Precedent and Ignore
          Allegations Establishing a Pattern .....................................................34

II.  APPELLEES SHOWED NO VALID GROUNDS TO AFFIRM AS
     TO THE OTHER ASSERTED ERRORS. ..................................................39

CERTIFICATE OF COMPLIANCE.................................................................43

CERTIFICATE OF SERVICE.............................................................................44

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Abraham v. Singh*,
480 F.3d 351 (5th Cir. 2007)....................................................35, 37

*Ackerman v. Schwartz*,
947 F.2d 841 (7th Cir. 1991).........................................................12

*Akers v. Newby*,
2021 WL 7159936 (M.D. Fla. June 14, 2021)................................10

*Allstate Ins. Co. v. Plambeck*,
802 F.3d 665 (5th Cir. 2015)....................................................24, 32

*Annulli v. Panikkar*,
200 F.3d 189 (3d Cir. 1999)............................................................7

*Arruda v. Curves Int'l, Inc.*,
861 F.App'x 831 (5th Cir. 2021)...............................................*passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................20, 29

*Bailey v. Memphis Bonding Co., Inc.*,
2019 WL 1300092 (W.D. Tenn. Mar. 21, 2019) ............................38

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................5

*Bias v. Wells Fargo & Co.*,
942 F.Supp.2d 915 (N.D. Cal. 2013)..............................................17

*BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co.*,
706 F.App'x 521 (11th Cir. 2017).....................................................9

*Braswell Wood Co. v. Waste Away Grp., Inc.*,
2010 WL 3168125 (M.D. Ala. Aug. 10, 2010)................................10

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008).......................................................................32

*Bridgewater v. Double Diamond-Delaware, Inc.*,
    2010 WL 1875617 (N.D. Tex. May 10, 2010) .................................................37

*Brown v. China Integrated Energy, Inc.*,
    875 F.Supp.2d 1096 (C.D. Cal. 2012) ...............................................36

*Broyles v. Wilson*,
    3 F.3d 439, 1993 WL 347222 (5th Cir. 1993) ...............................................17

*In re Burzynski*,
    989 F.2d 733 (5th Cir. 1993) .......................................................30, 39

*Calcasieu Marine Nat'l Bank v. Grant*,
    943 F.2d 1453 (5th Cir. 1991) ......................................................39

*In re Checking Acct. Overdraft Litig.*,
    797 F.Supp.2d 1323 (S.D. Fla. 2011) ...............................................10

*Chris Albritton Const. Co. v. Pitney Bowes Inc.*,
    304 F.3d 527 (5th Cir. 2002) ......................................................21

*City of Pontiac Gen. Employees' Ret. Sys. v. Dell Inc.*,
    2016 WL 6075540 (W.D. Tex. Sept. 16, 2016) ...............................................20

*City of San Jose v. JUM Glob., LLC*,
    2016 WL 3443385 (N.D. Cal. June 23, 2016) .................................................8

*Clinton v. Sec. Benefit Life Ins. Co.*,
    63 F.4th 1264 (10th Cir. 2023) .....................................................22

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013) .......................................................29

*Com. Metals Co. v. Chazanow*,
    2009 WL 3853704 (N.D. Tex. Nov. 17, 2009) ...............................................28

*Crowe v. Henry*,
    115 F.3d 294 (5th Cir. 1997) ...........................................7, 11, 19, 20

*Crowe v. Henry*,
    43 F.3d 198 (5th Cir. 1995) .....................................................20, 41

iii

*Cypress/Spanish Ft. I, L.P. v. Pro. Serv. Indus., Inc.*,
    814 F.Supp.2d 698 (N.D. Tex. 2011) .........................................................29, 31

*D&T Partners v. Baymark Partners LP*,
    __ F.4th __, 2024 WL 1458394 (5th Cir. Apr. 4, 2024) ...........................*passim*

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*,
    855 F.2d 241 (5th Cir. 1988)................................................................39

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008)..........................................................19, 26, 28

*Earl v. Boeing Co.*,
    611 F.Supp.3d 345 (E.D. Tex. 2020)........................................................32

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
    223 F.3d 12 (1st Cir. 2000) .................................................................34

*Ekhlassi v. Nat'l Lloyds Ins. Co.*,
    926 F.3d 130 (5th Cir. 2019) ..................................................................3

*Gagan v. Am. FABlevision, Inc.*,
    77 F.3d 951 (7th Cir. 1996)..............................................................36, 37

*Gemini Ins. Co. v. Indem. Ins. Co. of N. Am.*,
    2024 WL 138596 (5th Cir. Jan. 12, 2024).....................................................3

*Gemstone Foods, LLC v. AAA Foods Enterprises, Inc.*,
    2022 WL 439538 (N.D. Ala. Feb. 12, 2022) .............................................9, 10

*Hibernia Nat. Bank v. Carner*,
    997 F.2d 94 (5th Cir.1993)...................................................................24

*Hill v. AETC II Privatized Hous., LLC*,
    2023 WL 6532631 (W.D. Tex. Mar. 21, 2023) ...............................................19

*Home Orthopedics Corp. v. Rodriguez*,
    781 F.3d 521 (1st Cir. 2015) .................................................................39

*Huntingdon Life Scis., Inc. v. Rokke*,
    986 F.Supp.982 (E.D. Va. 1997).............................................................36

*IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*,
900 F.3d 640 (5th Cir. 2018).....................................................2, 5, 37

*Ibe v. Jones*,
836 F.3d 516 (5th Cir. 2016)...........................................................18

*Inter-Cont'l Promotions, Inc. v. MacDonald*,
367 F.2d 293 (5th Cir. 1966)...........................................................14

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
10 F.4th 422 (5th Cir. 2021)............................................................40

*Jones v. Bock*,
549 U.S. 199 (2007)........................................................................37

*Kamen v. Kemper Fin. Servs.*,
Inc., 500 U.S. 90 (1991)..................................................................3

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009)...........................................................31

*In re Managed Care Litig.*,
298 F.Supp.2d 1259 (S.D. Fla. 2003).....................................9, 11, 12

*Marriott Bros. v. Gage*,
704 F.Supp.731 (N.D. Tex. 1988)....................................................18

*McNally v. United States*,
483 U.S. 350 (1987)........................................................................22

*McZeal v. Louisiana*,
2021 WL 4163988 (M.D. La. Aug. 11, 2021)...................................33

*Mey v. Medguard Alert, Inc.*,
2020 WL 1258639 (N.D.W. Va. Mar. 16, 2020)..............................36

*Midwest Grinding Co. v. Spitz*,
976 F.2d 1016 (7th Cir. 1992).........................................................37

*Molina-Aranda v. Black Magic Enterprises, L.L.C.*,
983 F.3d 779 (5th Cir. 2020)...........................................................31

*Morganroth & Morganroth v. DeLorean*,
   123 F.3d 374 (6th Cir. 1997)............................................................25

*Norfolk S. Ry. Co. v. Boatright R.R. Prod., Inc.*,
   2021 WL 1264237 (N.D. Ala. Apr. 6, 2021).......................................9

*O'Keefe v. Ace Rest. Supply, LLC*,
   2016 WL 127566 (E.D. Pa. Jan. 12, 2016)...................................27, 38

*In re OSG Sec. Litig.*,
   12 F.Supp.3d 619 (S.D.N.Y. 2014) ....................................................19

*Perlman v. Zell*,
   185 F.3d 850 (7th Cir. 1999)..............................................................7

*Powers v. British Vita, P.L.C.*,
   57 F.3d 176 (2d Cir.1995).............................................. 7, 11, 22, 23

*Ray v. Spirit Airlines, Inc.*,
   836 F.3d 1340 (11th Cir. 2016)........................................................32

*Salinas v. United States*,
   522 U.S. 52 (1997)...........................................................................30

*Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*,
   319 F.3d 205 (5th Cir. 2003)...................................................7, 10, 17

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 ...................................................................................37

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis
   U.S. LLP*,
   806 F.3d 71 (2d Cir. 2015)...............................................................32

*Simmons v. Peavy-Welsh Lumber Co.*,
   113 F.2d 812 (5th Cir. 1940)........................................................8, 14

*SKS Constructors, Inc. v. Drinkwine*,
   458 F.Supp.2d 68 (E.D.N.Y. 2006).............................................37, 38

*Slechta v. Kahn*,
   2010 WL 11600997 (N.D. Ga. Apr. 29, 2010)................................33

*St. Germain v. Howard,*
556 F.3d 261 (5th Cir. 2009) ............................................................32

*State Farm Mut. Auto. Ins. Co. v. Valery Kalika,*
2006 WL 6176152 (E.D.N.Y. Mar. 16, 2006) .................................37

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
551 U.S. 308 ......................................................................................12

*Templeton v. Jarmillo,*
28 F.4th 618 (5th Cir. 2022) ...............................................................4

*Terrell v. Childers,*
1993 WL 433687 (N.D. Ill. Oct. 21, 1993) .....................................38

*Thomas v. Ameritas Ins. Corp.,*
2021 WL 834028 (M.D. La. Mar. 4, 2021) ......................................20

*Thomas v. Ameritas Life Ins. Corp.,*
34 F.4th 395 (5th Cir. 2022) ............................................................20

*Torres v. S.G.E. Mgmt., L.L.C.,*
838 F.3d 629 (5th Cir. 2016) .....................................................5, 32

*Toth Enterprises II, P.A. v. Forage,*
__F.Supp.3d__, 2023 WL 8723199 (W.D. Tex. Dec. 18, 2023) ...............35, 37

*United Healthcare Services, Inc. v. Next Health, LLC,*
2021 WL 764035 (N.D. Tex. Feb. 26, 2021) ....................................28

*United States v. Aucoin,*
964 F.2d 1492 (5th Cir. 1992) ............................................................5

*United States v. Bollinger Shipyards, Inc.,*
775 F.3d 255 (5th Cir. 2014) .................................................4, 18, 28

*United States v. Comstock,*
974 F.3d 551 (5th Cir. 2020) .....................................................10, 17

*United States v. Finney,*
714 F.2d 420 (5th Cir. 1983) ............................................................30

*United States v. Harris*,
    821 F.3d 589 (5th Cir. 2016)....................................................12, 13

*United States v. Hoffman*,
    901 F.3d 523 (5th Cir. 2018)...........................................................30

*United States v. Jordan*,
    2023 WL 6878907 (5th Cir. Oct. 18, 2023)..............................25, 26

*United States v. Kane*,
    944 F.2d 1406 (7th Cir. 1991)........................................................26

*United States v. Keplinger*,
    776 F.2d 678 (7th Cir. 1985)..........................................................13

*United States v. Kimmel*,
    777 F.2d 290 (5th Cir. 1985)..........................................................12

*United States v. Kreimer*,
    609 F.2d 126 (5th Cir. 1980)..........................................................23

*United States v. Persico*,
    832 F.2d 705 (2d Cir. 1987)...........................................................30

*United States v. Phipps*,
    595 F.3d 243 (5th Cir. 2010)..........................................................29

*United States v. Reed*,
    908 F.3d 102 (5th Cir. 2018)..........................................................18

*United States v. Ritchey*,
    604 F.Supp.3d 397 (S.D. Miss. 2022) ...........................................13

*United States v. Sanjar*,
    876 F.3d 725 (5th Cir. 2017)..........................................................26

*United States v. Spalding*,
    894 F.3d 173 (5th Cir. 2018)..........................................................30

*United States v. Strother*,
    2023 WL 7399550 (5th Cir. Nov. 8, 2023) ....................................18

*United States v. Swenson*,
    25 F.4th 309 (5th Cir. 2022)......................................................12, 13

*United States v. Torres Lopez*,
    851 F.2d 520 (1st Cir. 1988) ...............................................................30

*United States v. Umawa Oke Imo*,
    739 F.3d 226 (5th Cir. 2014)...............................................................26

*United States v. Warren*,
    986 F.3d 557 (5th Cir. 2021)...............................................................29

*United States v. Weimert*,
    819 F.3d 351 (7th Cir. 2016)...............................................................17

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    355 F.3d 370 (5th Cir. 2004)..................................................................8

*Varela v. Gonzales*,
    773 F.3d 704 (5th Cir. 2014)...............................................................31

*Vinton Pub. Power Auth. v. Sam Rayburn Mun. Power Agency*,
    2021 WL 3775641 (S.D. Tex. July 20, 2021)......................................9

*Vollmer v. Davis*,
    673 F.App'x 406 (5th Cir. 2016).........................................................3

*Walker v. S.W.I.F.T. SCRL*,
    517 F.Supp.2d 801 (E.D. Va. 2007)..................................................36

*Wave Length Hair Salons of Fla., Inc. v. CBL & Assocs. Properties*,
    Inc., 2017 WL 10604140 (M.D. Fla. Apr. 11, 2017 .........................38

*Webster v. Omnitrition Int'l, Inc.*,
    79 F.3d 776 (9th Cir. 1996)..................................................................5

*Williams v. Affinion Grp., LLC*,
    889 F.3d 116 (2d Cir. 2018).................................................................21

*Williams v. WMX Technologies*,
    112 F.3d 175 (5th Cir. 1997)................................................................5

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,*
    90 F.3d 118 (5th Cir. 1996)......................................................................36, 39

*Zastrow v. Houston Auto Imports Greenway Ltd.,*
    789 F.3d 553 (5th Cir. 2015)......................................................................6, 7

**Rules**

5th Cir. R. 32.1 ...........................................................................................43

Fed. R. App. P. 32(a)(5).............................................................................43

Fed. R. App. P. 32(f).................................................................................42

Rule 8 ...........................................................................2, 5, 18, 31, 37

Rule 9(b).......................................................................2, 3, 5, 19, 37

Rule 12(b).....................................................................................11, 12

# GLOSSARY OF ADDITIONAL TERMS

| AOB | Appellant's Opening Brief |
|---|---|
| F-Appellees | Appellees Scot Florsheim, JP-Banner, L.P., Liberty Bankers Life Insurance Company, Bradford A. Phillips, and Louann Hall |
| FAB | F-Appellees' Brief |
| J-Appellees | Appellees Mark D. Jordan, Laura Maczka-Jordan, JP-Banner GP, L.L.C., Sooner National Property Management, L.P., JP Realty Partners, Limited and Banner Investors, L.L.C. |
| JAB | J-Appellees' Brief |

## Note:

All internal alterations, quotation marks, footnotes and citations herein are omitted, and all emphasis is added unless otherwise noted.

All previously defined terms are the same as those in the AOB's Glossary of Terms.

When the totality of Appellant's well-pled allegations is accepted as true, and all inferences are drawn in its favor, Appellant's allegations demonstrate this case is not a mere contract dispute. This Court and many others held that allegations of contractual overbilling—like the overbilling alleged in this case—are sufficient to support RICO claims predicated on mail and wire fraud. AOB.24-28. Appellees fail to persuasively distinguish the numerous authorities holding that bogus charges plausibly support fraud-based RICO allegations—especially where, as here, they are combined with allegations of direction, management, motive, systematic conduct, and Jordan/Maczka's felony fraud convictions. And Appellees' inflated billing scheme—with (1) its "level of erroneous and inappropriate charges" that "[the auditor] ha[s] never seen," (2) Appellees' concealment, and (3) their withholding of further billing reports upon discovery of their fraud—is not merely a "sloppy" practice or an isolated occurrence. Rather, this is how Appellees do business. They systematically victimize other tenants and investors, who have made allegations that are remarkably similar to Appellant's allegations here.

Appellant alleged a deliberate and continuing pattern of racketeering, thus squarely falling within the "notoriously expansive" RICO statute that must be "liberally construed to effectuate its remedial purposes." AOB.22 (collecting authorities). Appellant also sufficiently alleges intent given the circumstances pled, including direction, management, motivation, and Appellees' financial incentive

based on emails and texts spanning years and letters received by Appellant further detailing the fraudulent scheme. And even if certain aspects of fraud (but, notably, not Appellees' state of mind) require particularized facts, Appellant alleges such facts, thus providing the "fair notice" of the claims against each Appellee. AOB.46 (citing *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018)).

# ARGUMENT

## I. APPELLEES SHOW NO VALID GROUNDS TO AFFIRM THE IMPROPER DISMISSAL OF THE RICO CLAIMS.

### A. Appellees' Waiver Arguments are Wrong.

F-Appellees claim Appellant waived certain arguments raised in the AOB. FAB.18/19/30/51-52. This is wrong. Every argument raised by Appellant in its AOB was raised below.[1] In any event, the waiver argument is also incorrect as a matter of law. For example, F-Appellees contend Appellant waived Rule 9(b)'s

---

[1] F-Appellees claim that Appellant waived Rule 8's notice pleading for its allegations of knowledge, as well as inferences of fraud through motive or conscious behavior, *but see* ROA.1521 (F-Appellees themselves conceding application of both); ROA.1442 (Appellant arguing intent is to be averred generally and it need only plead that Appellees entered lease with no intention of performing, which can be inferred from subsequent acts); ROA.1824-25 (Appellant arguing intent shown through evidence of active involvement in scheme and shared goal of making money) & ROA.1167 (Appellant arguing that entering contract with no intention of performing may give rise to fraud; intent may be averred generally and requires allegations that set up a basis from which this can be inferred). F-Appellees also claim Appellant waived its ability to demonstrate sufficiency of RICO pattern without additional victims, *but see* ROA.1784-86 (arguing 20 predicate acts alleged—which all involve injuries to Appellant—were sufficient to establish a RICO pattern; third-party litigation shows that the scheme was open-ended and continuous); ROA.746-47/ROA.1428-29/1431-38 (even aside from open-ended continuity of scheme based on evidence of conduct involving third-parties, predicate acts done to plaintiff sufficient for closed-ended continuity); ROA.1784-88/1827 (same).

inapplicability to pleading "conditions of a person's mind," as well as the correct standard for measuring sufficiency of fraud allegations, such as their sufficiency based on an inference of "reckless indifference to … falsity…." (FAB.18/30.)[2] These statements of governing law are properly before the Court. *See Kamen v. Kemper Fin. Servs.*, Inc., 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *cf. Ekhlassi v. Nat'l Lloyds Ins. Co.*, 926 F.3d 130, 138 (5th Cir. 2019) (issues properly considered when they present "a pure question of law").

Additionally, as long as Appellant's arguments arise from grounds raised by the District Court's orders, such as sufficiency of intent allegations under Rule 9(b) or possibility of "single-victim" patterns here, there is no waiver. *See Gemini Ins. Co. v. Indem. Ins. Co. of N. Am.*, 2024 WL 138596, at *5 n.3 (5th Cir. Jan. 12, 2024) ("Gemini is not raising new arguments but rather urging that the grounds relied on by the district court in denying its motion for summary judgment were wrong."); *Vollmer v. Davis*, 673 F.App'x 406, 410 n.1 (5th Cir. 2016) ("[A]n appellant may raise an issue not raised below, but considered by the district court."). Similarly,

---

[2] J-Appellees cite the standard of "reckless disregard for the truth" as still governing here. JAB.30.

Appellant's reliance on this Court's binding authority supporting arguments urged below is proper, and F-Appellees offer no authority to the contrary. *Compare* FAB.18 (claiming Appellant waived its reliance on *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260-61 (5th Cir. 2014) (finding dismissal for insufficient pleading of intent to improperly impose "higher pleading standard" than required)), *with*, *e.g.*, *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) ("A new precedent is not a new argument; it is new support for an existing argument…. Whether or not an issue is preserved in the trial court does not depend on what authorities the arguing party cites to that court…. Citing and analyzing the best discovered authority on the issue supports the presentation, but it is not the same thing as identifying the issue.").[3]

### B. Appellees' Arguments Further Confirm that Appellant Sufficiently Alleged Racketeering Activity.

Appellant sufficiently alleged Appellees' racketeering activities of mail and wire fraud in support of Appellant's RICO claims. AOB.23-52. Appellees respond with half-baked authority distinctions and, just like the District Court, ignore many of Appellant's allegations. AOB.2-16.

As an initial matter, F-Appellees' attack on the applicable pleading standards

---

[3]     *Arruda v. Curves Int'l, Inc.*, 861 F.App'x 831, 836 (5th Cir. 2021) is not to the contrary, since it dealt with a never-raised source of duty to disclose, an entirely new claim rather than an additional argument.

(FAB.16-18) seeks to apply heightened standards where none exist. While there are particularity requirements applicable to Appellant's RICO claim under Rule 9(b), they do not extend to "[m]alice, intent, knowledge, and other conditions of a person's mind…." AOB.21-22 (collecting authorities). These elements only require notice pleading under Rule 8. AOB.21.[4] Moreover, F-Appellees ignore the Supreme Court's mandate for RICO to be interpreted "liberally," "broadly" and "expansively," which this Court followed by applying "broad definitions of fraud" under the statute. AOB.22-23 (citing, *inter alia*, *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 639 (5th Cir. 2016)).[5] As Appellant showed, this is the prism that the

---

[4] F-Appellees purposefully muddle this distinction by claiming that Rule 8 cases, such as *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), are "inapplicable" to fraud-based RICO claims (FAB.16), even though *Twombly* and its progeny provide the correct standard for pleading "conditions of a person's mind." AOB.21-22. There are no contrary authorities. Indeed, F-Appellees cite *Williams v. WMX Technologies*, 112 F.3d 175 (5th Cir. 1997), for the general pleading standard under Rule 9(b) (FAB.16), but that case reiterated that "[t]he cry of pleading technicalities must be put in perspective[,] … [and] [i]ssues were to be defined by discovery, not pleading," while confirming that "we read Rule 9(b) as part of the entire set of rules, including Rule 8(a)'s insistence upon 'simple, concise, and direct' allegations." *Id.* at 178; *accord* AOB.21-22 & 46 (citing, *inter alia*, *IAS Servs.*, 900 F.3d at 647). Notably, *Williams* is a securities fraud case, where plaintiff failed to plead affirmative false statements—which, as Appellees confirm, are not required for mail/wire fraud here (FAB.34; JAB.25/29).

[5] J-Appellees take issue with this Court's statement in *Torres* regarding "broad definitions of fraud" by contending that "RICO doesn't even define 'fraud.'" JAB.27. *Torres* cited *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 786 n.7 (9th Cir. 1996), in support of its statement, and *Webster* clarified the statement as applying an "expansive test" for conduct qualifying as mail/wire fraud under RICO. In this connection, J-Appellees' diatribe against broad construction of criminal statutes confuses their recent briefing in connection with Jordan/Maczka's criminal convictions (affirmed by this Court) with this civil matter. *Compare* JAB.28 (collecting criminal cases in support of invoking "the rule of lenity" that precludes broad construction of "criminal" liability), *with United States v. Aucoin*, 964 F.2d 1492, 1496 (5th Cir. 1992) (concluding that "Appellants' resort to the rule of lenity is unavailing" and citing precedent "declin[ing] to apply the rule of lenity to the RICO statute").

District Court failed to apply to Appellant's allegations here.

As shown below, Appellees' responses fare no better on the merits and fail to validate the District Court's erroneous reasoning.

1. **Appellees Ignore Allegations and Authorities Confirming that Appellant Sufficiently Pled a Fraudulent Scheme.**

Appellant's factual allegations sufficiently plead a fraudulent scheme conducted through the racketeering activity of mail and wire fraud. For example: Appellant alleged: (1) Appellees' transmission of inflated charges is "classic mail fraud;" (2) Appellees' course of conduct demonstrating their intent not to perform is actionable fraud when viewed together with allegations of the totality of circumstances, including direction, management, motive and repeated pattern of similar deceptive conduct; and (3) Appellees' concealment of material facts. AOB.23-39.

In response, Appellees' primary argument is that Appellant's RICO claim is nothing more than a breach of contract claim. To support this argument, F-Appellees rely on this Court's decisions distinguished by Appellant as dealing with allegations that are very different from those at issue here. *Compare* FAB.19-20, *with* AOB.38-39 (distinguishing *Arruda*, 861 F.App'x at 836, as dealing with violations of disclosure rules, and *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553,

562 (5th Cir. 2015), as having no predicate fraud claims).[6] Importantly, both cases lack key ingredients of Appellant's allegations, such as: (1) fictitious charges covering up feigned performance, which this Court recognized as "classic mail fraud" (AOB.24, citing *Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 215 (5th Cir. 2003)), along with many other courts that followed this reasoning (AOB.24-28 (collecting authorities)), and (2) allegations of Appellees' other deceptive conduct, along with the criminal fraud convictions of both Jordan and Maczka-Jordan (AOB.42-46). These allegations elevate this case from the mere "broken promises" of *Arruda* to the actionable malicious breach of *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir.1995), adopted by this Court in *Crowe v. Henry*, 115 F.3d 294, 297 (5th Cir. 1997).

### (a)  Appellees' Fictitious Charges are "Classic Mail Fraud."

F-Appellees' bullet-point laundry list of supposed distinctions of Appellant's cases holding contractual overbilling can be actionable fraud only further supports Appellant's position. In fact, F-Appellees concede that "allegations of payments for goods and services never received" establish actionable fraud. FAB.25-27.[7] While

---

[6]    J-Appellees similarly disregard Appellant's distinguishment of *Annulli v. Panikkar*, 200 F.3d 189 (3d Cir. 1999), and *Perlman v. Zell*, 185 F.3d 850 (7th Cir. 1999), on the same point (AOB.39). Notably, the District Court cited *Perlman* as confirming that fraud allegations can be based on one's "lies and a plan not to keep one's promise" (ROA.2168), which Appellant alleged here, yet the District Court ignored.

[7]    F-Appellees argue their bullet-point list of distinctions demonstrates that Appellant's authorities involved "something other than mere overcharging," yet immediately concede this

Appellees may quibble with Appellant's reading of the Lease and its requirements, their contrary contractual interpretation is neither controlling on a motion to dismiss nor "contradicts" the allegations of feigned performance, as J-Appellees' reliance on *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004), demonstrates. In *Riley*, this Court specifically distinguished F-Appellees' almost century-old authority on this point when it held that "[a]t this preliminary [motion to dismiss] stage, the district court should dismiss only if it appears beyond doubt that Plaintiff can prove 'no set of facts' in support of her claim," and "[e]ven if [plaintiff]'s exhibits called into question …. [some allegations], they did not call into question all her allegations of false claims." *Id.* at 377 (distinguishing, *inter alia*, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)). The *Riley* Court then concluded that "[t]he district court therefore acted prematurely in dismissing the complaint because it precluded the opportunity for Plaintiff by subsequent proof to establish a claim supporting the allegations not refuted by exhibits." *Id.*; *see also City of San Jose v. JUM Glob., LLC*, 2016 WL 3443385, at *2 (N.D. Cal. June 23, 2016) (where defendant contended contract attached to the complaint "contradict[ed] the complaint's allegations," holding that "the proper interpretation of the relevant documents is a question for another day," and "purely

---

"something other" is "inflated or fictitious invoices" (FAB.25-27), which is part of what Appellant alleges.

for pleading purposes, the court does not find that the exhibits negate the complaint's allegations").[8]

Likewise, F-Appellees' reliance on the supposed dichotomy of "authorized" and "unauthorized" contractual charges in *Gemstone Foods, LLC v. AAA Foods Enterprises, Inc.*, 2022 WL 439538 (N.D. Ala. Feb. 12, 2022), fares no better because it fails to respond to Appellant's showing that the *Gemstone* decision supports Appellant's position. AOB.28-29. Among other things, charges for fake performance do not qualify as "authorized" under any contract. The *Gemstone* court illustrated this by citing to, *inter alia*, *Norfolk S. Ry. Co. v. Boatright R.R. Prod., Inc.*, 2021 WL 1264237, at *4 (N.D. Ala. Apr. 6, 2021), where defendants "allegedly misrepresented that they were adequately … [performing] pursuant to a contract" and thus generated "significant invoice discrepancies," *id.* at *3, as well as to *In re Managed Care Litig.*, 298 F.Supp.2d 1259, 1278 (S.D. Fla. 2003), where contractual overcharges were "systematic" and thus surpassed "individual contractual level." Appellant made such allegations here.

Nevertheless, F-Appellees (and the District Court's decision) rely on supposedly contrary out-of-circuit, district-level authorities discussed by the

---

[8]    *See generally BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co.*, 706 F.App'x 521, 524 (11th Cir. 2017) (where pleaded contract interpretation is plausible, "[t]he court may not engage in contract interpretation at the motion to dismiss stage"); *Vinton Pub. Power Auth. v. Sam Rayburn Mun. Power Agency*, 2021 WL 3775641, at *4 (S.D. Tex. July 20, 2021) ("contract interpretation at the motion to dismiss stage is premature" if plaintiff's reading is plausible).

*Gemstone* court (FAB.21-23, citing *In re Checking Acct. Overdraft Litig.*, 797 F.Supp.2d 1323 (S.D. Fla. 2011), and *Braswell Wood Co. v. Waste Away Grp., Inc.*, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010)). To the extent these cases hold that contractual overcharges cannot qualify as fraudulent, they are contrary to the weight of authority cited by Appellant—including this Court's opinion in *Sandwich Chef* that viewed such charges as "classic mail fraud" supporting RICO claims, which ***all Appellees unanimously ignore***. AOB.24-28 (citing, *inter alia*, *Sandwich Chef*, 319 F.3d at 215 ("overcharge caused by an inflated invoice … was classic mail fraud because defendants knowingly sent policyholders invoices that they knew were higher than the … [governing] rates"), and *United States v. Comstock*, 974 F.3d 551, 557 (5th Cir. 2020) (confirmed by F-Appellees as involving "false invoices that did not accurately reflect the number of hours of janitorial work provided" (FAB.25)— *i.e.*, one of the allegations here)). Notably, the unpublished opinion in *Braswell* cited no authorities for its reasoning, and neither did *Checking Acct.*, which simply followed *Braswell*.[9] They are neither persuasive nor binding on this Court.

### (b)    <u>Appellees' Malicious Breach Shows Intent to Never Perform.</u>

Appellant's allegations are more than the mere "broken promises" of *Arruda* because they show a malicious breach. A fraudulent scheme supports a RICO claim

---

[9]    In *Akers v. Newby*, 2021 WL 7159936 (M.D. Fla. June 14, 2021), where "the Complaint unequivocally allege[d] that Defendants wrongfully overbilled," the *Akers* court refused to follow *Braswell* and allowed the RICO claim to proceed based on "fraudulent overbilling." *Id.* at *3-4 & n.1.

when defendant "violates an agreement so maliciously and so soon after it is made that his desire to do so before he entered into the agreement is evident." AOB.37/40 (citing, *inter alia*, *Powers*, 57 F.3d at 184, and *Crowe*, 115 F.3d at 297 (relying on *Powers* for the RICO standard of fraudulent intent)). The fake charges here started as soon as Appellees took over management (ROA.819/¶150), resulting in an unprecedented level of erroneous and unsubstantiated billing. ROA.945/975. In response, Appellees only posit (wrongly) this argument was waived. FAB.35. Not only did Appellant raise the issue, but the District Court discussed similar "intent not to perform" authorities and then ignored them. ROA.2168-69. In other words, the District Court acknowledged certain nonperformance does qualify as fraud, but erroneously held—in violation of the Rule 12(b) standard—that Appellant did not sufficiently plead the right kind of nonperformance.

### (c) Appellees Concealed Facts.

#### (i) Appellees, Like the District Court, Ignore Concealment Allegations.

As Appellant further showed (AOB.30-32), the District Court ignored allegations of concealment, even though there is no dispute that such allegations state an actionable racketeering activity under RICO. ROA.2171 (District Court confirming that allegations establishing "concealing information" provide sufficient support for "a cognizable racketeering claim"); FAB.24 (citing *Managed Care*, 298

F.Supp.2d at 1278, for the same rule).[10]

Appellees respond by misconstruing the law and claiming there is no actionable concealment without a duty to disclose. FAB.28/JAB.29. But, as Appellant showed, "half-truths" are actionable fraud, independent of any preexisting disclosure obligations. AOB.31-32.[11] F-Appellees acknowledge this by citing *Managed Care*'s statement that fraud can be based on "[c]oncealment of critical data, even without a formalized duty to disclose…." FAB.24 (citing 298 F.Supp.2d at 1278 (original alteration)). Any contrary pronouncements in the unpublished disposition in *Arruda*, 861 F.App'x at 834 (cited by all Appellees), which relied on *United States v. Harris*, 821 F.3d 589, 600 (5th Cir. 2016), have been recently denounced as inconsistent with this Court's later decision in *United States v. Swenson*, 25 F.4th 309, 318 n.3 (5th Cir. 2022) (collecting cases where omissions where sufficient to support mail fraud convictions where the defendant was not

---

[10]     J-Appellees concede pleadings in this case are measured by "all of the facts alleged not only one fact," citing the same authority F-Appellees try to reject (JAB.35/FAB.29). Indeed, the Supreme Court made clear the "holistic[]" approach requiring courts "not to scrutinize each allegation in isolation but to assess all the allegations" based on their "collective[]" weight applies to any "Rule 12(b)(6) motion[] to dismiss …." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 & 326.

[11]     F-Appellees fail to explain why a jury instruction on the law of actionable fraud under the mail/wire fraud statute in *United States v. Kimmel*, 777 F.2d 290, 293 n.1 (5th Cir. 1985), should not govern here, since it provides that "fraudulent representation may be accomplished by conduct, by acts as well as by words, by silence when there is a duty to speak, *by half-truths calculated to mislead*, or by statements made with a reckless indifference as to whether they are true or false" *Id.* Indeed, it is bedrock law that one is "require[d] … to tell the truth about material facts once they commence speaking." *Ackerman v. Schwartz*, 947 F.2d 841, 846 (7th Cir. 1991).

under a duty to disclose).  *See United States v. Ritchey*, 604 F.Supp.3d 397, 405-06 & n.3 (S.D. Miss. 2022) (collecting authorities contrary to *Harris* and also concluding that "*Harris* is contrary to the Fifth Circuit's more recent decision in *Swenson* which is controlling precedent this Court must follow"); *see also United States v. Keplinger*, 776 F.2d 678, 697 (7th Cir. 1985) ("It requires no extended discussion of authority to demonstrate that omissions or concealment of material information can constitute fraud ... cognizable under the mail fraud statute, without proof of a duty to disclose the information....").

F-Appellees also argue that there is no actionable concealment because Appellant "learned of the fraud" from the audit reports.  FAB.27.[12]  But, as Appellant showed (and F-Appellees ignore), discovery of fraud—through audit or otherwise—does not negate the fraudulent nature of the billing statements asserting, for example, charges for fake performance.  AOB.29-30.

### (ii)     Lease and Audits Further Support Concealment.

F-Appellees' argument that the Lease provisions and/or audit findings contradict Appellant's allegations of fraud and concealment also fail because the

---

[12]     *But see* FAB.5 (stating that the auditor relied on Appellant's pre-audit letters challenging the provision of services).  J-Appellees contest the allegation that they failed to provide all the requested information for the audit (JAB.37), but then concede that they failed to do so with regard to at least one category of the requested facts.  *See id.* (conceding failure to provide requested information as to competitiveness of management fees); *see also* ROA.975 ("We have not received a response to our inquiry ….").

claimed contradictions are fake.[13]  When addressing the four categories of the bogus

charges used as specific examples in Appellant's brief (AOB.12; *see also* ROA.784-

95 (identifying nine other categories)), F-Appellees fail to negate the alleged

concealment.  Instead, F-Appellees:

(1)    unconvincingly frame allegations that they concealed unperformed

janitorial services as a dispute about "quality" of services (FAB.5);[14]

(2)    all but admit their charges concealed janitorial supplies they did not

purchase, since all Appellees say in response is that the prior management did the

same (FAB.6);[15]

(3)    ignore that the charges for security services concealed inadequate

staffing because, *inter alia*, the full-time security guard Appellees were obligated to

provide under the Lease was rarely there (*compare* FAB.5-6, *with* ROA.792/¶95);

and

(4)    argue they did not conceal or lie about charged salaries, benefits and

bonuses for Sooner's part-time employees because they were properly prorated

---

[13]    Other courts distinguish F-Appellees' authorities on this point for this very reason.  *See, e.g.*, *Inter-Cont'l Promotions, Inc. v. MacDonald*, 367 F.2d 293, 302 (5th Cir. 1966) (distinguishing *Simmons* where plaintiff's position is "reconcilable with the contract").

[14]    Notably, only 9% of the required janitorial services were performed, with a "fair market value a fraction of amounts invoiced." ROA.950.

[15]    Janitorial supplies increased by 1110% under Appellees' management (from $1,827.40 under prior ownership to $20,286.47) and were already included in the third-party vendor's paid rate (ROA.950).

(FAB.4-5). Yet the 2018 audit determined that a properly staffed building would have **3** employees with a gross payroll of $178,373 (ROA.949). But Appellees charged for **8** employees and improperly passed on bonuses, overstating gross wages by $152,777 in 2018 alone. ROA.950; *see also* ROA.955-56 (same for **7** employees in 2017). Critically, Appellant alleged that Appellees ***actually staffed the building with only 2 part-time employees*** (ROA.788/¶78).[16] These allegations of deliberate fictitious billing cannot reasonably be construed as mere "disagreement" or "misallocation", much less "contradicted" by contract terms allowing proration.[17]

Tellingly, in response to allegations that Appellees failed to disclose they improperly charged Appellant for renovations to other properties, F-Appellees posit that the charges were simply "miscategorized" (while J-Appellees concede they "should not have been included") and claim there is no fraud involved because the accountant performing the audit did not label it as such. FAB.6-7/28-29 & JAB.34; *but see* AOB.12/32 (citing ROA.945/ROA.931-34/ROA.936-41/ROA.975 (quoting

---

[16] J-Appellees' suggestion that "market survey[s]" used by the auditor are somehow subjective (JAB.8) ignores that Appellant's claim deals with concealment of improper staffing. The survey showed that Appellees charged almost double the market total for *three full-time* employees for what in reality were only *two part-time* employees.

[17] Similarly, F-Appellees claim the audit "ignored the Gross-Up language in §1(k)" (FAB.5), but gross-up is irrelevant to the auditor's analysis of proper gross total wages for services at market rates. Regardless, the audit analyzes §1(k)'s gross-up and identifies overcharges *on that basis alone*. ROA.947-48/953-54. Moreover, Appellees also used the wrong "Rentable Area" to calculate the gross up, causing further overcharges. ROA.948/954; ROA.851/¶1(d). In this connection, J-Appellees note that the "Rentable Area" number that is fixed by contract never changed despite the sale of one of the buildings comprising Banner Place (JAB.5-6), which is odd, given that it still fails to explain Appellees' unilateral *increase* of the number at issue.

auditor's reports of a "level of erroneous and inappropriate charges" that "we have never seen" and "unsupportable and unsubstantiated" charges, as well as Appellees' failure to respond with further necessary information requested for the audits)). Aside from F-Appellees' inexplicable demand for legal conclusions by auditors, this is precisely the kind of a factual dispute that cannot be resolved on a motion to dismiss. AOB.20-21.[18] This is especially so when these supposed contractual disputes are viewed, as they must be, in the context of the other allegations here, which show not only that Appellees repeatedly cause the same kind of "disagreements" with their other tenants[19] but are also run by convicted fraudsters. AOB.2/13-15. Combined with the auditors' findings, Appellant's allegations support a deliberate scheme to deceive.

J-Appellees' labeling of most of the alleged misrepresentations as matters of "opinion" (JAB.8-9/32-34) fares no better. As Appellant's numerous authorities show, inflated charges (especially when viewed in the context of the totality of the allegations and circumstantial evidence of deceit here) are not a matter of opinion but rather are "false because they d[o] not correspond to the actual amounts owed

---

[18]   F-Appellees' contention that "the adjustment" resulted from their disclosure of the misallocation (FAB.6) ignores that they never *accepted* the adjustment. According to the allegations, Appellees continue refusing to return the overcharged funds. ROA.783/¶59.

[19]   *See, e.g.*, ROA.1913-15/¶¶ 96 (billing 8 to 10 times the labor necessary), 97-98 (improper accounting practices), 99 (failure to issue credits to tenants), 101 (improper gross-ups, 4% management fee was overmarket, overcharging for engineers, duplicated and inflated pass-through expenses).

pursuant to the … agreements" and thus add up to "classic mail fraud…." AOB.24/26 (citing, *inter alia*, *Sandwich Chef*, 319 F.3d at 215, and *Bias v. Wells Fargo & Co.*, 942 F.Supp.2d 915, 939 (N.D. Cal. 2013)).[20] Indeed, J-Appellees concede charged expenses were only to include "actual" costs (JAB.12). Yet Appellant's allegations show the statements concealed that the communicated costs were not "actual" expenses. J-Appellees' claim that "nothing [was] misrepresented" as to the rest of the inflated charges because they were "disclosed" (JAB.7-8/32-34) fails for the same reason: fake charges communicated as owed by Appellant in furtherance of the overall alleged scheme are misrepresentations. Indeed, J-Appellees' attempt to distinguish *Comstock*, 974 F.3d at 557, as involving "not just overbilling … but … false invoices" (JAB.34) applies with equal force here, as the *Comstock* invoices were false ***because*** they "did not accurately reflect the number of hours of janitorial work … provided" (*id.*; FAB.25 (confirming the same)).

## 2. The Totality of the Allegations Plausibly Infers Fraudulent Intent.

Appellant also showed that its allegations plausibly demonstrate Appellees' intent to defraud, especially considering the allegations of: (1) direction, control, and management, (2) their course of conduct demonstrating intent not to honor promises,

---

[20]     J-Appellees' cited authorities are not to the contrary because they do not deal with inflated bills. *See Broyles v. Wilson*, 3 F.3d 439, 1993 WL 347222, at *9 (5th Cir. 1993) (alleged opinion was a statement that plaintiff "engaged in unethical practices"); *United States v. Weimert*, 819 F.3d 351, 366 (7th Cir. 2016) (inaccurate predictions how bidder would respond to counteroffer are "negotiating positions" in a proposed sale).

(3) concealment of material information, (4) other similar victims (supported by sworn testimony) and letters sent to Appellant (ignored by the District Court), and (5) Jordan/Maczka-Jordan's convictions for deceptive conduct.  AOB 32-46.

In response, Appellees agree state of mind "can be averred generally" but nonetheless, insist the allegations of intent here did not provide "some factual basis" rising to a "strong inference of fraudulent intent," which F-Appellees incorrectly label as "heightened pleading"  (FAB.17 (citing "some factual basis" as the applicable standard)).[21]  This position ignores Appellant's authorities and its allegations, including extensive circumstantial evidence of deceptive intent. AOB.32-46.  Moreover, this Court declined to impose any such "higher pleading" standard for intent allegations in *Bollinger Shipyards*, 775 F.3d at 260-61 & n.14, and reversed a dismissal for insufficient pleading of "scienter," finding that fraudulent intent allegations are sufficient as long as they comply with "Rule 8's requirement that the allegation be plausible."[22]

---

[21]     None of the F-Appellees' cited authorities support the label.  *Marriott Bros. v. Gage*, 704 F.Supp.731, 740 (N.D. Tex. 1988), only requires "some factual basis," while *United States v. Strother*, 2023 WL 7399550 (5th Cir. Nov. 8, 2023), and *United States v. Reed*, 908 F.3d 102, 124 (5th Cir. 2018), are criminal appeals after jury trials that have nothing to do with civil pleading. In turn, J-Appellees' cited standard of "specific facts" relies on *Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016), which merely found fraud based on overselling tickets inconsistent with other pleaded facts, *id.* at 526 (pointing to defendants' "frantic last-minute installation of [extra] seats and potential adverse publicity from intentional nonperformance" as inconsistent with fraudulent intent).

[22]     J-Appellees' insistence that mail/wire fraud are "specific intent crimes" requiring proof of knowledge (JAB.30) has nothing to do with the civil pleading standards at issue here.

Applying the correct standard to Appellant's allegations of the unprecedented "level of erroneous and inappropriate charges" and "unsupportable and unsubstantiated" charges (AOB.12/32)[23]—especially when considered, as they must be, in the context of the totality of Appellant's allegations, including other similar victims and criminal convictions establishing Jordan/Maczka's dishonest predisposition, and properly viewed in Appellant's favor on a motion to dismiss—give rise to a plausible inference of dishonest intent.

None of Appellees' arguments show otherwise for at least six reasons.

***First***, F-Appellees argue the audit reports are an insufficient "factual basis" for any fraudulent intent. FAB.30-31. However, the reports provide just one of the many pieces of Appellant's allegations and submissions that ***collectively*** give rise to the required inference. In response, F-Appellees attempt to dismiss this Court's holding in *Crowe*, 115 F.3d at 297 (affirming a finding of fraudulent intent for RICO

---

[23]     J-Appellees attack this statement as made "by a real estate broker, not a certified public accountant" (JAB.36), implying lack of the necessary experience to support this conclusion. This is a factual issue that is inappropriate to inject at the pleading stage, as is J-Appellees' apparent *Daubert*-esque arguments regarding lack of foundation. Rule 9(b) does not require admissible evidence, just sufficient plausible facts. *See, e.g., Hill v. AETC II Privatized Hous., LLC*, 2023 WL 6532631, at \*4 (W.D. Tex. Mar. 21, 2023); *accord Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("fraud pleadings may be based on information and belief"); *In re OSG Sec. Litig.*, 12 F.Supp.3d 619, 622 (S.D.N.Y. 2014) (explaining that pleading facts upon information and belief permits a claimant to "find admissible evidence to support those allegations at a later stage"). Additionally, J-Appellees' contention that the "unprecedented level" conclusion was limited to only one audit (JAB.37/42) is not only inapposite, since 2017 and 2018 OPEX charges supply sufficient grounds for the alleged fraud in themselves, but also because the 2019 audit, signed by a CPA, similarly reported "unsupportable and unsubstantiated" charges. ROA.975.

claims based on the totality of "circumstantial evidence"),[24] by simply labeling it pre-*Iqbal* authority.[25]  But *Iqbal* never held that that allegations of circumstantial evidence are somehow inherently implausible.  *See, e.g., City of Pontiac Gen. Employees' Ret. Sys. v. Dell Inc.*, 2016 WL 6075540, at *4 (W.D. Tex. Sept. 16, 2016) (denying motion to dismiss and confirming that "[c]ircumstantial evidence can support a *scienter* inference"); *cf. Thomas v. Ameritas Ins. Corp.,* 2021 WL 834028, at *3 (M.D. La. Mar. 4, 2021) (observing that "the 'intent to deceive' element can only be proven with circumstantial evidence"), *aff'd sub nom. Thomas v. Ameritas Life Ins. Corp.,* 34 F.4th 395 (5th Cir. 2022).  F-Appellees also argue *Crowe* involves "unique" facts, but that is equally unavailing because the facts in *Crowe* involved defendant's purposeful organization of various property holdings to bilk plaintiff out of money, which are similar allegations to those at issue here (AOB.43-44).

**Second**, F-Appellees cannot validate the District Court's failure to recognize that one's course of conduct may establish fraudulent intent.  And they incorrectly claim the District Court "did not conclude affirmative misrepresentations are required …."  FAB.32-33; *but see* ROA.2172 (rejecting fraud-by-course-of-conduct

---

[24]     F-Appellees miscite the *Crowe* decision at issue.  *Compare* AOB.43-44 (citing *Crowe*, 115 F.3d at 297), *with* FAB.31 (citing *Crowe v. Henry*, 43 F.3d 198 (5th Cir. 1995), an earlier decision in the same case that never dealt with intent allegations).

[25]     FAB.31-32 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

by faulting Appellant for failing to plead "affirmative representations or false statements")). These findings, combined with the District Court's failure to properly consider concealment allegations and the totality of pleaded circumstantial evidence inferring wrongful intent, underpin the District Court's erroneous conclusion that Appellant plead nothing more than contractual breaches. AOB.35-46. Similarly, F-Appellees' attempt to distance "the law in this Circuit" from the "litany of opinions" confirming that a scheme to defraud under the mail/wire fraud can be accomplished through a course of conduct and without any affirmative false statements (FAB.33-34)[26] fails on its face, as they then proceed to *agree* with Appellant that "no affirmative misrepresentation is needed to support a RICO claim … [as long as] some other type of fraud is [shown]" (FAB.34)—and so do J-Appellees (JAB.25 (mail/wire fraud predicates "need not contain material misrepresentations as long as they further" a fraudulent scheme)).

J-Appellees' reliance on *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124-25 (2d Cir. 2018), only further confirms that the communications "need not contain a false statement." And J-Appellees' insistence that the overall scheme must still "contain a misrepresentation" is different from the District Court's requirement of

---

[26]     F-Appellees cite no contrary law from this Circuit, as their sole authority on this point has nothing to do with any affirmative statements but rather requires only a "misrepresentation of fact … [through] false or fraud *pretenses*...." FAB.33-34 (citing *Chris Albritton Const. Co. v. Pitney Bowes Inc.*, 304 F.3d 527, 532 (5th Cir. 2002)); *accord* AOB.35-37.

"affirmative representations and false statements." J-Appellees' purposeful confusion of the issue is further evidenced by their mischaracterization of Appellant's position as supposedly contending "that it is not required to allege any actual misrepresentations" (JAB.26), *but see* AOB.35-37 (misrepresentation can be shown through course of conduct)). Their extensive discourse into the history of the statute to disprove this strawman argument (JAB.27, citing, *inter alia*, *McNally v. United States*, 483 U.S. 350, 356-60 (1987)) should be rejected, as Appellant never argued that the predicate offense could be established without a scheme to defraud— but rather that no affirmative false statements were required to do it, contrary to the District Court's holding. AOB.35-36 (citing, *inter alia*, *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023)). In fact, Appellant cited *McNally* to show that "proof of deceptive ***conduct*** supports a valid RICO claim." AOB.38.

***Third***, F-Appellees fail to address Appellant's authorities showing that the course of conduct alleged here gives rise to a strong inference of fraudulent intent because they establish that Appellees never intended to perform as promised. AOB.37/40 (citing, *inter alia*, *Powers*, 57 F.3d at 184). Instead, F-Appellees focus on only one of the twenty alleged predicates, the July 2019 "update" email promising improvements that were never completed. FAB.35-36. F-Appellees ignore the totality of allegations that the unprecedented level of erroneous and unsubstantiated charges here started as soon as Appellees took over management, which is the kind

of "malicious breach" that supports the required intent for mail/wire fraud under RICO. AOB.40 (citing *Powers*, 57 F.3d at 184 ("*Powers* alleges that [defendant took actions inconsistent with its contractual promises] … soon after the ink was dry on the agreements manifesting its benign intentions. We find these allegations of conscious behavior, which go beyond mere non-performance, sufficient to support an inference of intent to defraud.")). Moreover, as Appellant showed, the fact that Appellees stopped providing OPEX reports altogether further supports an inference of nefarious intent. AOB.41. Yet Appellees leave this unaddressed, despite J-Appellees' concession that they stopped sending reports *because* of the dispute. JAB.16.

**Fourth**, any notion that communication (or disclosure) of fake charges somehow negates the intent to defraud (FAB.36) is contrary to Appellant's authorities showing that defendants' communication (or disclosure) of false charges cannot negate deceitful intent—otherwise, the "classic mail fraud" of overcharging could not exist. AOB.29-30. In other words, one cannot overcharge without stating the wrongful amount, and the victim's ability to later discover the truth does not vitiate the fraudster's intent to lie in the first place. *Id.* (citing, *inter alia*, *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980)).

**Fifth**, F-Appellees' assertion that LBLIC and Phillips could not exhibit the necessary intent because there is nothing connecting them to the scheme until

Summer 2020 (FAB.36) ignores Appellant's allegations of their participation in the scheme through, *inter alia*, management, direction and concealment of the scheme from its inception (AOB.6-9), including text messages dating back to April 2017 (ROA.1941-49/1955/1959-60).[27] Regardless, LBLIC's own communications with Appellant demonstrate that LBLIC and Phillips exert control over the Appellees' operations (ROA.1918/¶¶109-10; ROA.1929/¶3 (communicating LBLIC/Phillips' ability to settle the dispute)) and knowingly joined the scheme, which means they share liability for all of the enterprise's actions. AOB.49 (citing, *inter alia*, *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015)).[28] Since the knowledge element need only be pleaded generally, the totality of allegations regarding LBLIC

---

[27]    F-Appellees ignore this extensive evidence, along with anonymous letters sent to Appellant supporting the same, when they summarize the allegations as supposedly involving nothing more than an ordinary lending relationship. *Compare* FAB.11-12, *with* ROA.1909-11/1917-18. In similar fashion, they miscite the FAC as "judicially admit[ting]" that LBLIC did not participate in the Banner transaction until 2020 (FAB.9), as the cited portion of the FAC pleads no dates and, notably, is preceded by allegations showing how both Phillips and LBLIC were part of the scheme before then. ROA.816/¶¶137-39.

[28]    Any argument that LBLIC/Phillips are insulated from liability for acts predating their involvement (FAB.9/12-13) is inapposite for the same reasons. F-Appellees' claim of some judicial admissions in the superseded original complaint (FAB.10-11) is legally wrong. *See, e.g.*, *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 101 (5th Cir.1993) ("To the extent that [the plaintiff's original pleading] did make a 'judicial confession,' that confession was amended away.") (original alteration). This is especially so given that the supposedly "admitted" fact (that Appellant did not know whether Phillips/LBLIC were told of Appellant's "claims of damages" (FAB.10)) is immaterial. In turn, Appellant's settlement communication of August 1, 2022 (predating the FAC by two months rather than "a few days" (FAB.11/n.10)), which attempts to obtain Phillips/LBLIC's cooperation in the investigation and thus offers a statement that Appellant "does not suggest that LBLIC is engaged in any impropriety" (ROA.2133), notably *pre*dates Appellant's further investigation and receipt of anonymous letters showing the opposite (ROA.1909-11/1917-18).

and Phillips sufficiently support intent at the pleadings stage of this case.

**Sixth**, Appellees' attempt to negate the totality of the alleged circumstantial evidence further supporting Appellant's showing of fraudulent intent is equally unavailing. For example, F-Appellees' attempt to portray Jordan/Maczka's convictions as "unrelated" (FAB.38) ignores that the underlying conduct involved similar deceptive conduct concerning another real estate venture. *See, e.g.*, ROA.2010-14/ROA.1093-1122; AOB.2/n.2 (citing *United States v. Jordan*, 2023 WL 6878907 (5th Cir. Oct. 18, 2023)); *id*. at *3-4 & 17 (listing convictions, including tax fraud,[29] and specifically as to Maczka, underscoring that the record below was "replete with evidence of Laura's dishonesty").[30] In fact, this Court discussed the evidence at criminal trial showing that Jordan's and Maczka's elaborate attempts to cover up their dishonest dealings blew up when "Mark hired Laura as a leasing agent at Sooner National Property Management [to manage the building in this case] for $150,000 per year with a signing bonus of $15,000," even though "Laura had no real estate experience and was not a licensed agent. The person who had previously held the position had left because the position only paid

---

[29]    This belies J-Appellees' assertion that they are not convicted "fraudsters." JAB.36.

[30]    As Appellant showed, the other acts need not be the exact same acts at issue. F-Appellees complain that, on this point, Appellant "grossly miscited" *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 379 (6th Cir. 1997), because it "did not admit evidence for purposes of fraudulent intent" (FAB.39). But that is what the court did, stating "evidence that [defendant] consistently failed to pay other lawyers was relevant **to prove the element of intent to defraud**…. [T]he probative value of this evidence **to demonstrate fraudulent intent, which is not easily susceptible of proof**, far outweighs its minor prejudicial effect." *Id.*

$70,000 per year." *Jordan*, 2023 WL 6878907, at *3.

The District Court's failure to properly consider these convictions as adding to the totality of allegations producing an inference of fraudulent intent—at the very least as to Jordan and Maczka themselves—supports reversal. AOB.44-46. Indeed, F-Appellees admit these allegations show their involvement with the scheme at least starting with Summer 2020, which is ***after*** Jordan and Maczka were convicted. Yet, F-Appellees still chose to do business with them. A "continuing professional relationship can be relevant to show defendant's awareness of principals' wrongful purpose." *United States v. Kane*, 944 F.2d 1406, 1410-11 (7th Cir. 1991); *accord United States v. Umawa Oke Imo*, 739 F.3d 226, 237 (5th Cir. 2014) (inferring knowledge from proximity to unlawful acts and complicity in the continuation of that illegal activity)). Moreover, F-Appellees' profit from the scheme also shows motive. AOB.6-9. *See United States v. Sanjar*, 876 F.3d 725, 746 (5th Cir. 2017) (inferring intent on similar facts); *Dorsey*, 540 F.3d at 339.

Appellant's allegations concerning Appellees' other victims further support the totality of the alleged facts producing an inference of fraudulent intent. AOB.45-46. Appellees' only response is that these allegations cannot show anything more than breach of contract as to the other victims. JAB.38. But this contention ignores entirely that at least one other tenant alleged "false representations" by way of

overcharging under the lease. ROA.2081-84; AOB.13.[31]  Moreover, every victim

claimed similar inflated billing; one even obtained sworn deposition testimony from

Appellees' insider confirming that the overcharging was intentional and "criminal."

AOB.4/13-15 (also discussing letters received by Appellant confirming the scheme).

As the conduct was aimed at other victims, Appellant is not required to allege it with

heightened particularity.  Moreover, it need not be identical conduct to support an

inference of repeated deceptions confirming that Appellant is not an isolated victim

but rather a part of a deliberate fraudulent scheme.  AOB.45-46.

### 3. Appellees Ignore Particularized Facts Establishing Fraudulent Circumstances, Including Each Appellees' Participation.

#### (a) Appellees Ignore Specific Facts Alleged to Show "Who, What, When and Where".

Appellant pled the "who, what, when and where" of the alleged fraudulent

scheme with sufficient particularity, especially because the allegations detail at least

twenty predicate acts, specifying when each took place, who performed it and how

each promoted the overall scheme.  AOB.46-52.  Furthermore, Appellant connects

each Appellee to the scheme by showing that each "either knew that the … [scheme

promoted statements that were] false or acted with reckless disregard of [their] truth

---

[31]    Furthermore, other victims need not even allege fraud to show that Appellees' conduct is systematic, which defeats their attempted portrayal of the overcharges here as merely a sloppy practice. *See, e.g., O'Keefe v. Ace Rest. Supply, LLC*, 2016 WL 127566, at *4 (E.D. Pa. Jan. 12, 2016) ("Although … complaints [by other victims] do not allege mail or wire fraud, Plaintiffs plead at least two predicate acts in the instant matter, and the facts asserted in all three cases depict [defendant] as an entity that repeatedly defrauds those with whom it deals.").

or falsity," especially when Appellant's allegations are considered, as they must be, together with the "circumstantial evidence and general allegations of [defendants'] knowledge and intent." *Id.* (citing, *inter alia*, *Bollinger Shipyards*, 775 F.3d at 261).

In response, F-Appellees deploy circular logic by arguing that there could not be sufficient particularity of their fraud because there was no fraud. FAB.40. They then proceed to ignore allegations of specific facts detailing each Appellees' participation in the scheme and defend the District Court's doing the same.[32] This is despite F-Appellees' citing to the District Court's reliance on *Com. Metals Co. v. Chazanow*, 2009 WL 3853704, at *6 (N.D. Tex. Nov. 17, 2009) (FAB.41), holding that RICO allegations need not "tie each defendant to each offensive mailing, but … only present enough evidence to connect the defendant to the fraudulent scheme." AOB.47/50 (also citing *United Healthcare Services, Inc. v. Next Health, LLC*, 2021 WL 764035, at *6 (N.D. Tex. Feb. 26, 2021) (plaintiff need only show each defendant's "***role*** in the scheme")).[33] Similarly, F-Appellees' contention that the

---

[32]     *Compare* FAB.40 (claiming that each Appellee's contribution to the fraud "is generalized and unspecific"), *with* AOB.4-10 (devoting separate subsections to each Appellee to separately detail each Appellee's participation in the scheme) & AOB.50-51 (addressing findings below as to each Appellee's role, which, aside from Phillips and LBLIC, none of the Appellees even attempt to rebut).

[33]     Phillip/LBLIC also claim that *United Healthcare* dealt with more specific allegations of "knowing participation." FAB.44/46 (citing ROA.1545-1730). Yet all plaintiff alleged in *United Healthcare* was that defendants were executives in control of the company that perpetrated the fraud, 2021 WL 764035, at *1 & 6, and Appellant similarly alleged Phillips/LBLIC's "role' here by showing, *inter alia*, that Phillips (and thus LBLIC, which he controls) funds the scheme, controls its assets and manages its participants (AOB.6-7).

predicate communications are consistent with a legitimate business relationship (FAB.43) ignores the totality of Appellant's allegations that provide the necessary inference of fraudulent intent—especially where, as here, the predicate mailings further the scheme by attempting to cover up fake charges and thus "lull" the victim into a belief of legitimacy.  AOB.48.[34]

Perhaps more importantly, F-Appellees' entire argument requires reading the allegations in *Appellees'* favor—*i.e.*, precisely what the District Court should not (but did) do.  J-Appellees' own cited authority, *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013), demonstrates as much.   In *Cohen*, the court reversed dismissal of fraud claims based on the trial court's "misunderstanding of *Iqbal*, which requires assertions of facts supporting a *plausible* inference of fraud—not of facts which can have no conceivable other explanation, no matter how improbable that explanation may be."  *Id.* at 360 (original italics); *see also Cypress/Spanish Ft. I, L.P. v. Pro. Serv. Indus., Inc.*, 814 F.Supp.2d 698, 713 (N.D. Tex. 2011) (AOB.48) (rejecting defendants' argument that the alleged predicate acts "were taken to comply with the … contract, not to further the enterprise" where the allegations

---

[34]     On this point, F-Appellees' take issue with Appellant's reliance on *United States v. Warren*, 986 F.3d 557, 564-65 & n.20 (5th Cir. 2021), contending that it dealt with aiding and abetting liability for mail/wire fraud (FAB.43). Yet the *Warren* court considered whether a given communication "furthers" a scheme and relied on *United States v. Phipps*, 595 F.3d 243, 246 (5th Cir. 2010) (AOB.48), which dealt with direct liability for wire fraud.

provided otherwise).[35]

F-Appellees also claim Appellant failed to allege more than one predicate act connected to Phillips and LBLIC because they only authored one predicate communication at issue and supposedly did not know about any others. FAB.12/37.[36] But Appellant "need not tie each defendant to each offensive mailing," as long as the allegations "connect the defendant to the fraudulent scheme…." AOB.47/49 (citing, *inter alia*, *United States v. Finney*, 714 F.2d 420, 423 (5th Cir. 1983)). Accordingly, LBLIC and Phillips need not specifically author communications in order to be held liable for them, as long as the allegations show their overall involvement in the scheme—which they do here (AOB.6-9).[37] The same is true as to F-Appellees' claim that Appellant's allegations do not particularize

---

[35] J-Appellees' reliance on *United States v. Spalding*, 894 F.3d 173 (5th Cir. 2018), is misplaced. In *Spalding*, the court affirmed the mail/wire fraud conviction despite defendant's claim that he did "legitimate business" and blamed "market conditions" for his failure to repay loans, suggesting that "bad luck, not bad faith, explain" his conduct. *Id.* at 181. This court held that "[a] rational jury could disagree," *id.*, just like it could disagree here, given the total picture of Appellant's allegations.

[36] F-Appellees also claim that the one email they did author does not contain any falsehoods (FAB.12), which ignores the law. AOB.36 (citing, *inter alia*, *United States v. Hoffman*, 901 F.3d 523, 546 (5th Cir. 2018) ("So while the mailing or wire must promote the scheme in some manner, it need not contain a falsehood.")).

[37] F-Appellees' lead authority on this point, *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993), is not to the contrary; it found predicate allegations sufficient and did not address the issue of their attribution. F-Appellees' reliance on assessment of predicate acts for statute of limitation purposes is even further off point (FAB.37, citing *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) (requiring at least one predicate act to be committed within the applicable limitations period)), as is their reliance on ***abrogated*** precedent dealing with the RICO conspiracy statute (FAB.37, citing *United States v. Torres Lopez*, 851 F.2d 520, 525 (1st Cir. 1988), *abrogated by Salinas v. United States*, 522 U.S. 52, 65 (1997) (rejecting requirement of two predicate acts for purposes of the RICO conspiracy statute)).

each defendant's "contribution" to the alleged scheme (FAB.43/45) because, among other things, Appellant sufficiently alleged "the participants profited from the RICO conspiracy" and "the parties [were] involved in the fraud." *Cypress/Spanish Ft.*, 814 F.Supp.2d at 712; AOB.49-52 (collecting authorities).

### (b) Appellant Plausibly Alleged Proximate Cause.

F-Appellees also suggest, as an alternative ground for affirmance, that Appellant failed to plead the proximate cause element with particularity. FAB.41-42 (setting the argument under the heading dealing with "requisite particularity") & 45 (claiming lack of "facts" on the same element for Phillips/LBLIC). But F-Appellees readily concede proximate cause must only be "plausibly alleged" (FAB.41), and J-Appellees claim it need only be "plausibly plead[ed]" (JAB.42). Indeed, proximate cause is not among the "circumstances" of fraud requiring particularized pleading. *See, e.g., Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009) (analyzing proximate cause for securities fraud under Rule 8's plausibility standard). There is nothing implausible about Appellant's allegations setting forth the specific dollar amount of overcharges resulting from Appellees' fraudulent billing (ROA.781-83),[38] and none of Appellees even address Appellant's

---

[38] Appellees cite no contrary authorities. Rather, their cases deal with very different fraud allegations, such as *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 785 (5th Cir. 2020) (immigrants' depressed wages "were several steps in the causal chain away from the transmission of fraudulent forms" to immigration authorities), or no fraud allegations at all, such as *Varela v. Gonzales*, 773 F.3d 704, 710-11 (5th Cir. 2014) (implausible that alleged predicates of hiring a few undocumented workers could depress wages for the whole market).

authority confirming as much. AOB.59/n.25 (citing *Earl v. Boeing Co.*, 611 F.Supp.3d 345, 356-57 (E.D. Tex. 2020)).

J-Appellees also contend Appellant cannot establish proximate cause because it did not rely on the alleged false statements. JAB.43-44. But this Circuit rejects any requirement of reliance because it is not an element of a RICO claim predicated on mail/wire fraud. AOB.28 n.16 (citing *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 637 (5th Cir. 2016)); *accord* JAB.44 (citing *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (requiring detrimental reliance for RICO-based fraud "is no longer good law")).[39] J-Appellees' reliance on supposedly contrary out-of-circuit authority is thus unpersuasive. Moreover, Appellees cited authorities do not even disagree with *Torres*.[40] Regardless, reliance is built into Appellant's allegations

---

[39]    J-Appellees suggest that *Torres* somehow should not be followed because "Appellees are aware of no cases" that reversed dismissal of RICO claims despite no allegations of reliance. JAB.44. But *Torres* relied on *Allstate*, 802 F.3d 665, where defendants appealed a jury verdict on this very ground by pointing to "the absence of evidence that Allstate relied on the misrepresentations," and this Court affirmed, holding "that Allstate proved proximate cause because it was a foreseeable victim, and not one wronged by the caprice of chance." *Torres*, 838 F.3d at 637. J-Appellees do not (because they cannot) contest that the allegations present Appellant as a foreseeable victim of the alleged fraud, since it was directed against Appellant.

[40]    *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 & 90-92 (2d Cir. 2015) (pre-*Torres* decision denying class certification and confirming that "reliance on the defendant's alleged misrepresentation is not an element of a RICO mail-fraud claim" but finding that certification was precluded because case required individualized proof of third-party decision making); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1350 (11th Cir. 2016) (pre-*Torres* decision requiring only "a direct link—or, indeed, any link at all—between" the misrepresentation and the alleged injury). J-Appellees also rely on *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 n.6 (2008), a decision that *Torres* expressly followed in rejecting reliance as an element of the claim. J-Appellees latch onto the *Bridge* court's footnote discussion of the Restatement of Torts, even though it deals with common law fraud that *Bridge* expressly *rejected* as governing the statutory elements of mail fraud. *See id.* at 656.

because the refunds contemplated under the lease necessarily rely on Appellees' charging correct amounts, and Appellees' overcharging thus necessarily produces the alleged injury. ROA.795-6/¶¶108-11 (specifically alleging Appellant's "justifiable reliance"). In this connection, J-Appellees claim that Appellant never "paid these overcharges" (JAB.18) is contrary to the record. As alleged, Appellant paid rent that includes operating expenses, and Appellees' overcharges resulted in their wrongful withholding of the amounts paid in excess of the properly chargeable costs. ROA.780/¶¶43-45. Moreover, Appellees, in retaliation to Appellant's complaints, invoiced Appellant for costs *in addition* to those paid into OPEX (ROA.782/n.10), thus creating a fake indebtedness that further injured Appellant. *See, e.g., McZeal v. Louisiana*, 2021 WL 4163988, at *6 (M.D. La. Aug. 11, 2021) ("false representation of debt owed" supports a fraud claim); *Slechta v. Kahn*, 2010 WL 11600997, at *8 (N.D. Ga. Apr. 29, 2010) ("false indebtedness" created by misrepresentations establishes injury and causation).

Furthermore, J-Appellees' proposal of "counterfactual inquiry" inferring that they might have owed no refunds to Appellant even if they did not overcharge it (JAB.44-45) is manifestly contrary to the applicable standard requiring that Appellant's allegations be accepted as true and all inferences be drawn in Appellant's favor. AOB.19.

**C.    Appellees Misinterpret Applicable Precedent and Ignore Allegations Establishing a Pattern**

Appellant sufficiently alleged a pattern of racketeering activity because the allegations show two or more (1) related, and (2) sufficiently continuous mail/wire fraud acts.    AOB.52-60.    Appellees attempt to defeat the second element by contending Appellant alleged one scheme and one victim.  FAB.48-49/JAB.40-42. This ignores Appellant's allegations of a future threat of continuing activity, which, even as to one victim, may suffice for continuity.  *See D&T Partners v. Baymark Partners LP*, __ F.4th __, 2024 WL 1458394, at *7 (5th Cir. Apr. 4, 2024).[41]  It also ignores Appellant's allegations pertaining to other victims that negate any notion of single scheme/single victim here.   While F-Appellees also posit that many of the pattern-related arguments have been waived, this is wrong both factually and as a matter of law.  *See* s*upra* at 2-4.

This Court's recent analysis in *D&T Partners*, 2024 WL 1458394, at *6-7, confirms that the supposed single victim/scheme concept does not undermine Appellant's allegations of open-ended continuity because: (1) the predicates here involve "implicit or explicit" threat of long-term conduct because Appellees, just like *H.J. Inc.*'s "hoodlum," will continue charging inflated OPEX (AOB.16/53

---

[41]    F-Appellees' own cited authority, *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000), confirms as much, since the court specifically observed that "[h]ad [plaintiff] argued that the defendants planned to operate the hotel indefinitely at a paper loss as a means of ***perpetually defrauding him***, … he would have a stronger argument for an open-ended RICO pattern."

(allegations that all Appellees ignore)), *D&T Partners*, 2024 WL 1458394, at *6, and (2) the alleged fraudulent scheming is how Appellees regularly conduct their business because they "repeat[] [their] fraud in similar business settings," *id.*; *see also Toth Enterprises II, P.A. v. Forage*, __F.Supp.3d__, 2023 WL 8723199, at *7-8 (W.D. Tex. Dec. 18, 2023) (finding sufficiently alleged pattern where, as here "[t]he repetitive predicate act of skimming money that belonged to someone else and sending fraudulent income reports … seem to be all in a day's work for Defendants"); AOB.47-48/53-54 (collecting authorities); AOB.10-16 (summarizing allegations how Appellees do the same to other tenants/investors).

F-Appellees actually acknowledge continuing conduct, stating "Appellant does not assert the pattern of conduct was discontinued" (FAB.50) but fail to appreciate that this means the alleged conduct is *ongoing*, thus supporting open-ended continuity. In contrast, J-Appellees focus on their failure to provide further OPEX reports (which is evidence of the fraud itself) as supposedly evidencing that there is no future threat. JAB.16-17/40-42. But just because they stopped sending reports does not mean they stopped overcharging. J-Appellees continue running the building; they simply have stopped producing the reports that confirm their fraud. In fact, this admission that reports stopped because of this lawsuit further supports a pattern. *See Toth*, 2023 WL 8723199, at *7; *accord Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007).

As to Appellees' regular way of doing business, Appellant did allege other victims, which the District Court ignored. AOB.55-59.[42] Appellees' contention that the allegations here present no fraud beyond Appellant's tenancy (FAB.48-49/JAB.41) thus perpetuates the same mistake, as does their suggestion that the allegations regarding other victims did not specify "acts or even investors" (JAB.18), which is belied by the detailed allegations of both (AOB.13-15). Appellees point to no authority rejecting a pattern where, as here, plaintiff sufficiently alleged that defendants employed similar overcharging schemes to cheat other victims, including another building tenant.[43] Appellees also point to no authority mandating the alleged

---

[42]    J-Appellees point to *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996), as supposedly rejecting "the mere existence of lawsuits" as insufficient to establish that the alleged mail/wire fraud is their regular way of doing business. JAB.41. But Appellant alleged more. AOB.56; *see also Huntingdon Life Scis., Inc. v. Rokke*, 986 F.Supp.982, 989 (E.D. Va. 1997) (distinguishing *Word of Faith* on the same point because plaintiff "has gone beyond cursory allegations of lawsuits … and specified details of the alleged predicate acts …. Without the aid of discovery, [plaintiff] cannot be expected to more fully develop its allegations."). This Court recently confirmed that as long as the similarities are sufficiently alleged, the other lawsuits provide cognizable support. *Compare D&T Partners*, 2024 WL 1458394, at *7, with ROA.1913-19 (specifying how other lawsuits' allegations were quite similar to Appellant's allegations). J-Appellees' attempt to negate letters received by Appellant that further support its allegations of other schemes (JAB.41) is similarly inapposite. In fact, one of them actually rejects J-Appellees' position, *see Brown v. China Integrated Energy, Inc.*, 875 F.Supp.2d 1096, 1113 n.65 (C.D. Cal. 2012) (plaintiff's reliance on third-party investigative reports "does not provide grounds for declining to accept their allegations of fact as true for purposes of resolving a motion to dismiss"); *see also Mey v. Medguard Alert, Inc.*, 2020 WL 1258639, at *3 (N.D.W. Va. Mar. 16, 2020) (declining to follow J-Appellees' other authority on this point, *Walker v. S.W.I.F.T. SCRL*, 517 F.Supp.2d 801 (E.D. Va. 2007), as the hearsay nature of anonymous sources is irrelevant because "the veracity of the allegations is not the standard on a motion under 12(b)(6)").

[43]    Notably, as Appellant showed, the Seventh Circuit moved away from the single scheme/victim rule altogether in its later decisions. AOB.53-54 (citing *Gagan v. Am. FABlevision, Inc.*, 77 F.3d 951, 963 (7th Cir. 1996) ("[T]he existence of a single victim does not preclude the existence of a pattern of racketeering activity ….")). It did the same with regard to J-Appellees'

fraud pertaining to other victims must be somehow particularized under Rule 9(b) (FAB.52-53/JAB.41), which is wrong. AOB.56-57 (citing, *inter alia*, *Abraham*, 480 F.3d at 355-56 (reversing requirement of "stringent pleading" on the continuity prong));[44] *D&T Partners*, 2024 WL 1458394, at \*2 (applying plausibility standard to analyze continuity allegations for fraud-based RICO claims).[45]

And allegations in other lawsuits involving similar schemes need not involve a final judgment. In fact, courts accept such allegations even where the other victims are "unnamed," let alone where, as here, they bring allegations in other lawsuits supported by sworn deposition testimony. *SKS Constructors, Inc. v. Drinkwine*, 458

---

reliance on *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992), as supposedly disfavoring each communication as a separate predicate (JAB.39), since in *Gagan*, the Seventh Circuit found "each instance of false billing" to impose a separate injury, 77 F.3d at 963, and so did courts in this Circuit, such as *Toth*, 2023 WL 8723199, at \*7-8—especially where, as here, each communication is designed to lull the victim into a false sense of security to hide the fraud (AOB.48).

[44] F-Appellees' attempt to distinguish *Abraham* by claiming that it focused on requiring no more than the pattern in *H.J., Inc.* (FAB.53) is defied by *Abraham*'s specific reference to "the liberal pleading standard with which the Plaintiffs' [pattern] allegations must be viewed" and its reliance on *Jones v. Bock*, 549 U.S. 199, 212 (2007), in support of that liberal standard, which, in turn, discussed Rule 8's notice pleading.

[45] The statutory RICO requirement of a "pattern," which ensures that RICO does not reach sporadic activity (*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14) is inapposite to the purposes underlying particularized fraud pleading, which serves to provide "fair notice" of the claim (*IAS Servs.*, 900 F.3d at 647). As such, courts apply Rule 8's notice standard to the pattern element even where the underlying predicates involve fraud. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Valery Kalika*, 2006 WL 6176152, at \*16 (E.D.N.Y. Mar. 16, 2006) (even "[w]here, as here, the RICO claims involve fraud," the "Complaint must only satisfy the notice pleading requirements of Rule 8(a) in alleging … the pattern of racketeering activity"); *accord Bridgewater v. Double Diamond-Delaware, Inc.*, 2010 WL 1875617, at \*10 (N.D. Tex. May 10, 2010) (AOB.57) ("The Fifth Circuit has held that the continuity requirement, though related to fraudulent predicate acts, need not meet heightened pleading requirements.").

F.Supp.2d 68, 80 (E.D.N.Y. 2006) (AOB.52) (denying motion to dismiss and crediting "allegations of essentially the same scheme perpetrated on unnamed parties … to support a claim of closed-ended continuity").[46] Similarly, F-Appellees' suggestion the other alleged victims may not have been necessarily defrauded through the same OPEX calculations (FAB.51) defies the broad definition of relatedness, which requires "similar" purposes, results or "methods of commission" (AOB.58). Appellees do not even attempt to distinguish Appellant's authorities[47] showing "each instance of false billing" creates a pattern (AOB.53-54), much less Appellant's allegations that other victims were similarly "cheated out of their money" (AOB.57-59).

Appellant also showed closed-ended continuity, although its open-ended

---

[46] In this connection, F-Appellees claim that Appellant's reliance on *Terrell v. Childers*, 1993 WL 433687, at *9 & n.6 (N.D. Ill. Oct. 21, 1993), where the court accepted allegations from other pending lawsuits, is different because the lawsuits here were "dismissed" (FAB.53). F-Appellees offer no record support for this claim, and the District Court only noted that the lawsuits never "proceeded to judgment" (ROA.2181). *See also Bailey v. Memphis Bonding Co., Inc.*, 2019 WL 1300092, at *6 (W.D. Tenn. Mar. 21, 2019) (denying motion to dismiss fraud-based RICO claims; observing that "[t]he factual allegations in [another lawsuit] are similar to the allegations here" and crediting them as part of pattern allegations); *O'Keefe*, 2016 WL 127566, at *4 (finding open-ended continuity for fraud-based RICO claims by accepting other lawsuits as "sufficient to demonstrate, for purposes of this Motion [to Dismiss], that the commission of fraud was [defendant]'s regular way of doing business" because they all alleged "similar conduct" by defendant as in the case at bar). Notably, there is no evidence in the record that the other lawsuits were "dismissed" on the merits.

[47] F-Appellees single out *Wave Length Hair Salons of Fla., Inc. v. CBL & Assocs. Properties*, Inc., 2017 WL 10604140, at *7 (M.D. Fla. Apr. 11, 2017), as involving "a standard lease" for all other victims (FAB.53). This does not mean that other victims count only when the fraud is exactly the same, which would be contrary to the definition of relatedness.

continuity allegations are enough to establish a pattern. AOB.53/n.22. As this Court recently reconfirmed, two or more predicates[48] stretching for more than a year plausibly alleged closed-ended continuity as long as the scheme involves "systemic victimization." *D&T Partners*, 2024 WL 1458394, at *4-6. The alleged scheme here targets other victims in Appellees' other properties and not just Appellant. AOB.10-16. It thus supports closed-ended continuity. As *D&T Partners* also reconfirmed, F-Appellees' authorities are distinguishable because they all involve schemes that came to their "logical conclusion," unlike the scheme here.[49]

## II. APPELLEES SHOWED NO VALID GROUNDS TO AFFIRM AS TO THE OTHER ASSERTED ERRORS.

Appellees offer little resistance as to the District Court's remaining errors

---

[48] J-Appellees' counting two OPEX reports as the only two alleged predicates (JAB.40-41) is unavailing, since, as discussed, every communication reinforcing the inflated charges is an additional predicate. In this connection, their statement that "even pleading two acts" is "not necessarily sufficient" for pattern (JAB.38) is not the law in this Circuit. *See, e.g., Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) ("Two isolated acts of racketeering have been held sufficient to constitute a pattern under this Circuit's unique precedent.").

[49] FAB.48 (citing *Word of Faith*, 90 F.3d at 123, *In re Burzynski*, 989 F.2d 733 (5th Cir. 1993), and *Delta Truck*, 855 F.2d 241); *see also* AOB.53 (distinguishing *Word of Faith* as involving a scheme with a definite termination point); *D&T Partners*, 2024 WL 1458394, at *6 (applying the same distinction to these cases). F-Appellees' other authorities are distinguishable for the same reason. *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453 (5th Cir. 1991) (emphasizing that continuity was lacking because, just like in *Delta Truck*, the alleged scheme "briefly flourished and then faded away"); *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 531 (1st Cir. 2015) (emphasizing that once consulting fees at issue were collected, there was no threat of repetition, and plaintiff did not claim the alleged predicates were part of defendants' regular way of doing business). Moreover, *Delta Truck* (a pre-*H.J. Inc.* decision) did not decide the issue of pattern because it found itself bound by another decision *precluding* rejection of pattern based on the single scheme/victim. As such, *Word of Faith*'s reliance on this line of cases as the relevant precedent for pattern was suspect.

asserted by Appellant. No Appellee opposes reversal as to supplemental jurisdiction if the dismissal of RICO claims is reversed. AOB.64-65.

Moreover, Appellant's allegations present sufficient facts to support a conspiracy claim (AOB.61-62), and Appellant showed the Court should reverse dismissal of conspiracy claims as to all Appellees if it finds that Appellant stated a substantive RICO claim against at least one of them. *Id.* J-Appellees do not respond to this (JAB.45), and F-Appellees' argument that the allegations of a conspiracy between them are not sufficiently specific (FAB.54-55) provide no support for this unwarranted heightened pleading requirement other than the lone out-of-circuit district court case that directly contradicts the authorities from this Circuit cited by Appellant, which require only sufficient facts to produce a plausible inference of such a conspiracy, such as those alleged here. AOB.61-62.

Finally, J-Appellees get the standard wrong (JAB.24) regarding this Court's review of the denial of further leave to amend. They ignore that where, as here, the denial is based on supposed futility, *de novo* review applies. AOB.62-64 (citing *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 430 (5th Cir. 2021)). In fact, F-Appellees confirm "the abuse of discretion standard is not appropriate." FAB.56.[50] For the reasons set forth by Appellant, the District Court's futility finding

---

[50] F-Appellees submit that "given … [the] history," the District Court's order denying leave to amend "was not motivated solely by futility" but cite no support for the Court to apply a different

was erroneous, thus warranting reversal. This is especially so, considering that Appellant's allegations require, at the very least, reversal as to Sooner and JP-Banner—as well as Jordan and Maczka, now convicted fraudsters. *See Crowe*, 43 F.3d at 204 & 207 (reversing dismissal of RICO claims as to one defendant as opposed to another).

---

standard by implying some different motivation. FAB.56. Regardless, the supposed history of "four" prior attempts to state a claim is wrong, especially as to the new defendants added by the FAC.

Dated: April 9, 2024

Respectfully submitted,

*/s/ Marina V. Bogorad*
Robert E. Linkin
Texas State Bar No. 0075773
rlinkin@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
807 Las Cima Pkwy, Suite 300
Austin, TX 78746
Telephone: (310) 201-1600
Fax: (737) 201-1601

Shain A. Khoshbin
Texas State Bar No. 11375975
skhoshbin@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251
Telephone: (972) 628-3600
Fax: (972) 628-3616

Marina V. Bogorad
California State Bar No. 217524
mbogorad@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
1925 Century Park. E., Suite 2300
Los Angeles, CA 90067
Telephone: (310) 855-3311
Fax: (972) 628-3616

# CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this Reply Brief for Appellant complies with the Court's Order dated April 5, 2024 (Doc. # 110), providing for up to 11,500 words, because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 11,450 words according to the word count provided by Microsoft Word word-processing software. The document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 because it uses a proportionally spaced Times New Roman typeface with 14-point font and 12-point font footnotes.

*/s/ Marina V. Bogorad*
Marina V. Bogorad

## CERTIFICATE OF SERVICE

I certify that on April 9, 2024, the foregoing document was served via electronic filing to all registered counsel of record.

/s/ Marina V. Bogorad
Marina V. Bogorad